BOSTON BELTING COMPANY *vs.* CITY OF BOSTON.

SAME *vs.* SAME.

SAME *vs.* SAME.

Middlesex.   November 12, 1902. — May 19, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Damages*, From diversion of stream.  *Municipal Corporations.*  *Practice, Civil,* Costs.

Under a statute providing for the assessment of damages in the manner provided when land is taken in laying out highways, in awarding damages to a manufacturer of rubber products against a city, for diversion of water in carrying out an authorized improvement of a stream, the amount of damage is to be determined by the diminution in value of the petitioner's real estate for the uses to which it was adapted including that to which it was being put when the water was diverted, but allowing nothing for loss of business or diminution of profits. The cost of a supply of water equal to that of which the petitioner was deprived is not necessarily the measure of damages.

A city is liable in an action of tort for damage to real estate caused by the negligent manner in which it has carried out the provisions of a statute authorizing the improvement of a stream.

Assessors to award damages cannot allow as costs sums paid by a petitioner for the services of a stenographer at the hearing and in making reports of evidence, under an agreement of counsel for his payment by both parties in equal shares.

Sums paid voluntarily by the parties to assessors of damages, in excess of the sum that the court is expected to award for their compensation, cannot be taxed as costs.

TWO PETITIONS, filed respectively November 12, 1889, and May 23, 1898, under St. 1874, c. 196, §§ 2, 3, for damages from the diversion of the waters of Stony Brook, and an ACTION OF TORT for other damages from alleged negligence of the respondent in polluting and dealing with the waters of that brook. Writ dated December 22, 1897.

A demurrer to the first petition was overruled by a decision of this court reported in 152 Mass. 307. Later the Superior Court appointed as assessors Charles S. Hamlin, John Kilbourn and John C. Cobb. By St. 1898, c. 262, the city of Boston was authorized to make by its mayor an agreement with the Boston Belting Company as to the waters of Stony Brook and other water supply. Under this authority an agreement was made of which the sixth article was as follows:

"Article 6. The questions heretofore submitted to Charles S. Hamlin, John Kilbourn, and John C. Cobb, as assessors as aforesaid, and the specific determination thereof, are hereby withdrawn from said assessors, and in lieu thereof the said assessors or their successors as hereinafter provided for shall hear the parties in said petitions and action of tort and determine and report, saving therein all questions of law desired by either party, except questions as to the admissibility of evidence, and except those questions already determined by the Supreme Judicial Court in the first petition aforesaid, and except all questions as to the power of said assessors to act; and said report shall determine: — First. What sums of money, if any, shall be paid by said city of Boston to said Boston Belting Company as damages to its said real estate up to but not beyond January first, 1898, for which said city is legally liable under said petitions or any similar petition. Second. What sum of money, if any, shall be paid by said city of Boston to said Belting Company for damages for which the city is legally liable by acts, doings or omissions of said city up to but not beyond Jan-

uary first, 1898, for which said city is liable in said action of tort or any similar action of tort, and is not liable for in said petitions."

Thereafter in the Superior Court the cases came on to be heard before *Gaskill*, J. on a motion of the petitioner for an acceptance of the awards of the assessors and the entry of judgments thereon, and a motion of the petitioner for the allowance of certain items of costs, mentioned in the opinion ; and also upon a motion of the respondent for the recommittal of the awards. The judge with the consent of the parties, for the purpose of settling the questions of law raised by the motions, denied the respondent's motion to recommit the awards, and ordered judgment to be entered on the award in favor of the petitioner in the first of the petitions in the sum of $117,000, less the sum of $46,661.40, being a balance of $70,338.60, with interest from January 1, 1898, to the date of the entry of judgment, and also ordered judgment to be entered for the petitioner on the award in the action of tort in the sum of $67,000, with interest from January 1, 1898, to the date of the judgment. The judge also, without prejudice to the plaintiff's right to recover such items of costs as might thereafter be found to be legally taxable by the clerk, denied the plaintiff's motion that there should be included in the plaintiff's costs the items mentioned in the report of the assessors, and reported the cases for determination by this court.

If the rulings were correct, the judgment or judgments and the ruling as to costs were to be affirmed. If there was any error in the rulings as to the questions of law raised by the awards, or either of them, or by the motions, the judgments, or such of them as ought not to have been entered, were to be set aside and the cases were to be remitted to the Superior Court, there to be proceeded with as law and justice might require and this court might direct.

The sections of St. 1874, c. 196, under which the petitions were brought are as follows:

"Section 2. Any person injured in his property by any of the acts done by said city, under the first section of this act, shall, upon application to the board of aldermen of said city, have compensation therefor, the amount thereof to be determined by said board of aldermen. And said board of aldermen shall finally

adjudicate upon the question of damages, within thirty days after the filing of said application, unless the parties agree in writing to extend the time. In case damages are awarded, payment shall be made forthwith by said city."

"Section 3. If the applicant is aggrieved, either by the estimate of his damages, or by a refusal or neglect within thirty days to estimate the same, he may, within three months from the expiration of said thirty days, or of the extended time as provided in the second section, apply for a jury and have his damages assessed in the manner provided when land is taken in laying out highways. If the damages are increased by the jury, the damages and costs shall be paid by the city, otherwise the costs arising on such application shall be paid by the applicant."

The case was argued at the bar in November, 1902, before *Knowlton, Morton, Lathrop, & Hammond*, JJ., and afterwards was submitted on briefs to all the justices.

*S. Hoar & C. A. Williams*, for the plaintiff.

*T. M. Babson*, for the defendant.

KNOWLTON, C. J. These cases come before us on a report from a judge of the Superior Court, founded on the petitioner's motion for the acceptance of an award and for judgment in favor of the petitioner thereon, and for the allowance of certain items. of costs which were disallowed in a supplemental award, and on motions of the respondent for the recommitment of the award, and for the disallowance of certain items of it on account of errors of law in the award.

An important question relates to the rulings of the assessors in reference to the estimation of damages to the petitioner under the St. 1874, c. 196, on account of the diminution in value of its real estate by the diversion of water and by other acts done under the statute in the work of improving Stony Brook and its tributaries. The time for which damages were to be estimated in this branch of the case, was the period between July 1, 1880, and January 1, 1898. The assessors were appointed by an agreement in writing made by the parties in pursuance of the St. 1898, c. 262, as well as by a rule of court, and this agreement prescribed for them duties in addition to those under the rule. On July 1, 1880, the petitioner's property consisted of about eighty-five thousand square feet of land with certain buildings thereon. On

January 1, 1898, it consisted of ninety-five thousand one hundred and ten square feet of land on which were five mills and other smaller buildings. About ten thousand feet of this land was purchased in 1892. Some of the buildings were rebuilt and enlarged, and some new buildings were erected from time to time. The business carried on at this place was the manufacture of rubber belting and some other products of rubber, which business had been conducted there for many years. The waters of Stony Brook had been used from the beginning for washing rubber, making steam, cooling rollers and other similar purposes. The assessors' report in part is as follows : " In determining the rule of law which is to govern the assessment of the petitioner's damages because of the acts of the city of Boston, it becomes material to consider whether the manufacturing site of the petitioner has a market value. The general rule concerning the assessment of damages in cases like this is [to award a sum which represents] the decline in the market value of the property because of the acts complained of. There is, however, an important exception to this general rule. Where property is so peculiarly fitted for the needs or desires of the owner that it would be difficult if not impossible to procure a purchaser for it at a fair intrinsic price, the damage is measured by the effect of the acts in question upon the intrinsic worth of the article to the owner, and the inquiry resolves itself into an estimate of the cost of procuring an equivalent for the owner for what has been taken away or damaged.

" While the estate of the petitioner, considering it solely with regard to the uses to which property is ordinarily put in that part of said city of Boston, namely, for the erection of stores, apartment houses, etc., and at the same time disregarding the manufacturing uses for which the property is adapted and for which it has been actually used during this period, may be said to have a market value, that is, a price at which similar property is bought and sold in the market, yet it is clear that the effect of the acts of said city upon said market value would not be a proper measure of damages suffered by the petitioner in this case. In view of the prevailing use, above indicated, of such property in said locality the complete removal of the brook would undoubtedly have tended to increase rather than to diminish said

market value. . . . We find that manufacturing sites of this description are not ordinarily bought and sold in the market. We rule that the measure of the petitioner's damage is the cost of a full equivalent for the waters of the brook of the use of which the petitioner, operating its business in a reasonable manner during said period, would necessarily have been and was deprived by the acts of the city, in accordance with said statute of 1874. . . . We assess the plaintiff's damage at $117,000."

The ruling as to the measure of damages does not appear to be correct. The facts may or may not have been such that the application of the rule stated would produce the same result as the true rule. The amount to be determined was the diminution of the property in value by reason of the loss of the water. This effect upon the value is to be determined in reference to the uses to which the property was adapted, including the use to which it was then being put. But it is not to be determined in reference to conditions which pertain solely to its owner. Loss to the business which was then carried on there could not be considered as in itself an element of damage. *New York, New Haven, & Hartford Railroad* v. *Blacker*, 178 Mass. 386, 392, and cases there cited. *Bailey* v. *Boston & Providence Railroad*, 182 Mass. 537. It is only the detriment to the real estate which is to be paid for, and in determining that detriment, its adaptability to different uses is to be considered. It may be that the rental value of the real estate for the uses to which it was best adapted was diminished by the sum which would be represented by the cost of a supply of water equal to that which was diverted, or it may be that the purchase of such a supply of water at current rates would have been a very uneconomical way of using the property, and that the cost of such a supply would be greatly in excess of the diminution of the property in value. The business which the petitioner was then carrying on there may have been in such a condition of unusual prosperity that the purchase of water at ruling rates would have been a reasonable outlay in reference to the effect upon the business, while, on the other hand, considering the rental value of the property for all kinds of business, including those kinds which require the use of water, this value may not have been affected to nearly the amount represented by the cost of this water at the price charged by aque-

duct companies. The assessment seems to have been made upon an assumption that the purchase of water would have been economical and proper in the management of the petitioner's business, while there is no express finding to that effect, and also upon an assumption that damages are to be awarded in reference to the value of the water to the petitioner's business, although for peculiar reasons the value of water to that business might be much more than the fair rental value of the water in connection with the property, ascertained in reference to the uses to which the property with the water was adapted. The assessment also assumes that the use of the property for manufacturing purposes with water, at whatever cost, would be a reasonable and proper mode of using it to obtain the best financial results.

It may be that these assumptions were all in accordance with the facts, and that the assessors for this reason have reached a correct result. Indeed, there are some indications of this in the report, but it does not appear; and there is much reason to fear that the assessors did not sufficiently regard the distinction between diminution in the value of the real estate which is to be paid for, and diminution in the profits of a business which is not an element of damage.

In the assessment of damage under the action of tort, the report discloses no error. It is settled that a city is liable for different kinds of negligence, such as were found by the assessors.\* *Boston Belting Co.* v. *Boston,* 149 Mass. 44, 46. *Bryant* v. *Bigelow Carpet Co.* 131 Mass. 491. *Aldworth* v. *Lynn,* 153 Mass. 53. *Nevins* v. *Fitchburg,* 174 Mass. 545. *Bacon·* v. *Boston,* 154 Mass. 100. *Morse* v. *Worcester,* 139 Mass. 389. *Allen* v. *Boston,* 159 Mass. 324. *Constitution Wharf Co.* v. *Boston,* 156 Mass. 397.

The assessors rightly ruled that they had no power to allow as costs sums paid by the petitioner for the services of stenographers at the hearing, and in making reports of evidence. These sums were paid under an agreement between the counsel for the hiring

---

\* The assessors found, that the respondent during the period from 1880 to 1898, negligently caused a pollution of the brook both by sewage coming from storm overflows, and by mud and dirt from construction, and diminished the flow of the water by diverting the waters of the brook and of certain tributaries during construction.

of a stenographer and his payment by both parties in equal shares. The law does not recognize such payments as costs to be taxed by the prevailing party. The law does not require the services of a stenographer in hearings of this kind, and if parties voluntarily provide one, they do it for their own convenience and at their own expense. See *Lincoln* v. *Taunton Copper Manuf. Co.* 13 Allen, 276.

The assessors were also right in their ruling that they had no power to tax as costs sums voluntarily paid them by the petitioner as compensation for their services. The law provides that the court shall award reasonable compensation to be paid to such officers by the respective counties, and not to be taxed in the bill of costs. See Sts. 1883, c. 216 ; 1886, c. 51 ; 1887, c. 289 ; 1899, c. 458 ; 1901, c. 366 ; R. L. c. 165, § 54. Whether the assessors are rightly designated in these cases, or whether in a part of their work they are commissioners, their compensation is to be paid by the county under an order of court. Sums paid them voluntarily by the parties, in excess of the sum which the court is expected to award, are not a proper matter for taxation as costs, any more than sums paid in like manner to stenographers. The case of *Newburyport Water Co.* v. *Newburyport,* 168 Mass. 541, is not an authority for the taxation of such payments since the passage of the St. 1901, c. 366.

The case must be recommitted to the assessors for the purpose of determining whether the sum allowed as damages under the St. 1874, c. 196, represents anything more than the diminution in value of the real estate for the uses to which it was adapted, by reason of the acts of the city under the statute, and if so, how much.

*So ordered.*