THE ELJAY REALTY COMPANY ET AL. *v.* NEWMAN E. ARGRAVES, HIGHWAY COMMISSIONER

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued December 6, 1961—decided January 23, 1962

*Julius B. Kuriansky,* for the appellants (plaintiffs).

*Milton H. Richman,* assistant attorney general, with whom were *Jack Rubin,* assistant attorney general, and, on the brief, *Albert L. Coles,* attorney general, for the appellee (defendant).

ALCORN, J.  The named plaintiff, hereafter referred to as the plaintiff, owned fifty-one acres of land in Darien. It had purchased this land on April 14, 1953, for $39,000. About forty-five acres of the land was subject to a lease to Stamford Sand and Stone, Inc., hereafter referred to as the lessee. The lease was dated January 8, 1951, and was for a term ending on January 31, 1957. The leased portion of the premises was to be used solely for the purpose of excavating, processing and selling sand, stone and gravel. A weekly rental was to be computed at seventeen and one-half cents per cubic yard for all material excavated and sold during the preceding week with a proviso for a minimum monthly payment of $250. On February 6, 1956, the defendant, pursuant to § 13-145 of the General Statutes, took approximately thirty acres of the plaintiff's land in connection with the layout of the Connecticut turnpike and assessed the plaintiff's damages at one dollar. The plaintiff appealed to the Superior Court, and the case was referred to a state referee. After the plaintiff appealed, the defendant amended his certificate of condemnation and as-

sessed the damages at $91,750. The lessee was allowed to file an intervening complaint in which it alleged that it had an interest in the appraisal of damages by virtue of its leasehold. The proportionate share, however, to which the lessee would be entitled, out of the total award, was not put in issue. See General Statutes §§ 48-21, 48-22. The referee found that the sand and gravel processing business was the "highest and best use" to which the plaintiff's land could be put. He determined that the plaintiff was entitled to damages in the amount of $125,000 for the taking of its interest in the property, and the court rendered judgment accordingly. Both the plaintiff and the lessee have appealed.

In reaching his conclusion as to the plaintiff's damages, the referee took into account the lessee's net profit in operating its sand and gravel business but refused to consider the cost of disassembling, moving and reassembling the lessee's crushing plant, which was located on the premises. The referee's action in these two respects presents the issues on appeal.

The referee was called upon to determine "all damages" which the plaintiff, as owner of the land, was entitled to recover as a result of the taking. General Statutes § 13-145. Such damages would be, in this case, the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter and after completion of the public improvement. *Andrews* v. *Cox,* 127 Conn. 455, 457, 17 A.2d 507; *Stock* v. *Cox,* 125 Conn. 405, 418, 6 A.2d 346. Market value, generally speaking, is defined as "the price that would in all probability—the probability being based upon the evidence in the case—result from fair negotiations, where the seller is willing

to sell and the buyer desires to buy." *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 688, 67 A.2d 851. Stated in another way, it is the price "which, in fair negotiations, a willing buyer and a willing seller could probably agree upon." *DelVecchio* v. *New Haven Redevelopment Agency,* 147 Conn. 362, 363, 161 A.2d 190. In the determination of this amount, it was proper to consider all the elements which legitimately affected the value of the land and which an owner and prospective purchaser could reasonably urge as factors influencing the fair price of it. Id., 364; *Harvey Textile Co.* v. *Hill,* supra; *Andrews* v. *Cox,* supra, 458. Among such factors would be the sand and gravel content of the land; *Hollister* v. *Cox,* 131 Conn. 523, 525, 41 A.2d 93; that the best use of the property was for a sand and gravel processing business; and that the lease in effect on the property was for such a business, had about a year to run and produced an annual rental income to the owner of about $9300. The fact that the lessee would have the expense of taking down and removing its crushing plant, either at the termination of the lease or sooner if required by the condemnation, was not an item that could properly affect the market value of the plaintiff's land. The situation might be otherwise if the plaintiff itself were conducting the sand and gravel business, since then it might fairly be disposed to demand a higher price if a prospective sale necessitated the expense of moving the equipment from the property. *DelVecchio* v. *New Haven Redevelopment Agency,* supra, 364; *Humphrey* v. *Argraves,* 145 Conn. 350, 353, 143 A.2d 432; *Harvey Textile Co.* v. *Hill,* supra, 689. The referee therefore was correct in refusing to consider any expense confronting the lessee in the removal of its equipment.

Likewise, evidence concerning the net income which was realized by the lessee from the operation of its business under its lease was not a proper element for the referee to consider in arriving at the fair market value of the plaintiff's land. Although the referee could properly consider the existence of a going business on the land as support for his conclusion that the best use of the premises was for a sand and gravel processing business; *Housing Authority* v. *Lustig,* 139 Conn. 73, 77, 90 A.2d 169; it is generally recognized that neither the past nor estimated future profits of a business are reliable evidence of the value of the land on which the business is located because business profits depend on so many factors that their effect on the market value of the real estate is too remote. 1 Orgel, Valuation under Eminent Domain (2d Ed.) § 162, pp. 655, 662; 4 Nichols, Eminent Domain (3d Ed.) § 12.3121 [1], [2]. A consideration of the lessee's profits in this case would be particularly unreliable in view of the fact that its operations could encompass forty-five acres, that the land condemned amounted to thirty acres and that it was not disclosed what portions of either area entered into the profits.

The defendant advances the proposition that where it appears that the property condemned is of such a nature that the profits derived from its use are the entire or chief source of its value, evidence of the amount of the profits is to be considered in determining the market value. For this proposition, the defendant cites, among other authorities, *State* v. *Suffield & Thompsonville Bridge Co.,* 82 Conn. 460, 74 A. 775. We do not indulge in a discussion of the merits of the defendant's claim. Its inapplicability to the facts of the case with which

we are now concerned is apparent from what has already been said concerning the unreliability of the evidence as to the profits here involved. Furthermore, the property involved in the *Suffield & Thompsonville Bridge Co.* case was of a unique nature, namely, a toll bridge, the owner of the bridge was the operator of the business conducted on it, and the business could not be located elsewhere. That case, therefore, partakes of a type of situation in which evidence of the realized profits may be permissible. 1 Orgel, op. cit. §§ 172, 174. None of the elements present in that case exist in the present case. The referee should not have considered the lessee's net profits in arriving at the fair market value of the plaintiff's property, and the court should, therefore, have rejected the report.

There is error, the judgment is set aside and the case is remanded with direction to reject the report of the referee and to proceed thereafter according to law.

In this opinion the other judges concurred.