STATE OF INDIANA *v.* GEIGER & PETERS, INC., ET AL.

[No. 30,302. Filed March 12, 1964.]

*Edwin K. Steers,* Attorney General, *Robert E. Robinson,* Deputy Attorney General, *Robert Hollowell,* Special Counsel and *Hollowell, Hamill & Price,* of counsel, of Indianapolis, for appellant.

*Jacob S. White, Edward B. Raub, Jr., William A. Wick* and *White, Raub & Forrey,* of counsel, of Indianapolis, for appellees Geiger & Peters, Inc., Harold I. Peters, Oscar C. Peters, Lena B. Peters.

*Paul R. Summers, Grace M. Curry* and *Bingham,*

*Summers & Spilman,* of counsel, of Indianapolis, for appellee Oklahoma Oil Co.

LANDIS, C. J.—The cause pending before us on this appeal grows out of complaints filed by appellees against appellant State of Indiana to recover damages in what is commonly referred to as an inverse condemnation proceeding. The actions were allegedly brought pursuant to the Eminent Domain Act of 1905[1] and the Limited Access Statute of 1945.[2] Appellees are the owners in fee, the lessee and the assignee of a leasehold interest in a strip of land on the east side of original Madison Avenue (U. S. Highway 31), in the city of Indianapolis which road or street has since been made into a limited access highway.

We have heretofore had before us appellant's petition for writ of mandate and prohibition seeking to compel the dismissal of the instant actions on the ground the lower court was without jurisdiction. In that proceeding we denied appellant's petition for the permanent writ and held that the complaints filed by appellees presented issues which the lower court had jurisdiction to adjudicate. See: *State, etc.* v. *Marion Cir. Ct. et al.* (1958), 238 Ind. 637, 153 N. E. 2d 327.

The record discloses that in the court below, appellant and appellees Geiger and Peters, Inc., and Harold, Oscar and Lena Peters, filed exceptions to the appraisers' report, and after the intervention of appellee Oil Company, the cause was submitted to the court for trial resulting in a finding and judgment for appellees in the sum of $87,000 plus interest of $31,639, totalling $118,639, apportioned among the several appellees as

---

1.  Burns' §3-1711 (1946 Repl.), Acts 1905, ch. 48, §11, p. 59, 64.

2.  Burns' §36-3105 (1949 Repl.), Acts 1945, ch. 245, §5, p. 1113, 1115.

specified therein. Appellant's motion for new trial was overruled and appellant has appealed to this Court contending the decision of the trial court was not sustained by sufficient evidence and was contrary to law.

The facts necessary for a consideration of the case follow:

The parcel of land of appellees in the city of Indianapolis allegedly damaged by the building of appellant's super highway was a pie-shaped tract with a frontage of 606.25 feet on old Madison Avenue to the west, and bordering on Caven Street 185.7 feet on the south. The northern portion of the tract was occupied by a large two-story plant and out-buildings with a frontage of 481.25 feet on Madison Avenue, and the southern portion upon which a gasoline filling station was located had a frontage of the remaining 125 feet on Madison Avenue.

The old Madison Avenue right-of-way was 66 feet in width, paved to a width of 44 feet, and the new limited access super highway, six lanes in width, was constructed to the west so that the east curb line of the new 70 foot pavement was substantially at the west curb line of the old pavement and 10 to 14 feet below the grade thereof. The eastern embankment of the new highway and the guardrail protecting it were located on the old Madison Avenue right-of-way, occupying 44 feet of its original width and cutting off all but 10 feet of its blacktop surface at the north. The remainder of the original Madison Avenue right-of-way (excepting the eastern sidewalk and grass strip) was taken for a service road which became a part of the limited access facility.

The construction of the new expressway cut off ingress and egress to and from the highway known as Madison Avenue on the west side of appellees' property. Cavin Street became a dead-end street. A dead-

end driveway or service road 18 to 24 feet in width was constructed by appellant along part of old Madison Avenue and the west side of appellees' property proceeding southerly to Caven Street. In order to reach said expressway from appellees' premises it would be necessary for either pedestrian or vehicular traffic to enter Caven Street to the south, then proceed east on said Caven Street approximately two blocks over a raised railroad crossing and then south or north and by circuitous routes to reach more distant interchanges on said expressway. It further appeared that the new dead-end narrow service road to the west side of appellees' property was not adequate to transport the steel beams and trusses 90 feet in length which were fabricated at lessees' plant on the northern portion of its property, but was the only access to said property after the cutting off of ingress and egress to Madison Avenue.

It was stipulated by the parties that the fair market value of all the rights and interests of appellees to the premises in question immediately after construction of the Madison Avenue expressway was $87,000 less than the fair market value immediately prior thereto.

Appellant first argues that under the facts of this case, appellant (the State) in cutting off appellees' right of ingress and egress has not taken or appropriated any interest of appellees in land for any public use and therefore the actions were not included under the Eminent Domain Act of 1905.

The general Eminent Domain Statute passed in 1905[3] provides in part:

"Any person having an interest in any land which has heretofore been or may hereafter be taken

---

3. Burns' §3-1711 (1946 Repl.), *supra.*

for any public use, without having first been appropriated under this or any prior law, may proceed to have his damages assessed under this act, substantially in the manner herein provided."

The Limited Access Statute of 1945[4] provides in part:

"For the purposes of this act, *such authorities* of the state, counties, cities, or towns, *may acquire* private or public *property and property rights for limited access facilities and service roads, including rights of access,* air, view, and light, by gift, devise, purchase *or condemnation in the same manner as is now* or hereafter may be *provided by law* to acquire such property or property rights for the laying out, widening or improvement of highways and streets within their respective jurisdictions. . . . The rights of all property owners who may claim damages, as provided by the Constitution of the state of Indiana, are preserved herein and may be enforced under the present laws of the state of Indiana." (Emphasis supplied.)

Appellant made a similar contention to the one he is here asserting when this case was previously before us in *State, etc.* v. *Marion Cir. Ct. et al.* (1958), *supra,* 238 Ind. 637, 153 N. E. 2d 327, contending that the Act of 1905 applied only when actual property was taken and did not apply to the consequential damages sustained in this case.

In such opinion we pointed out that appellant's cited cases of *State* v. *Patten* (1936), 209 Ind. 482, 199 N. E. 577, *Brown* v. *State* (1937), 211 Ind. 61, 5 N. E. 2d 527, and *Morris* v. *City of Indianapolis* (1912), 177 Ind. 369, 94 N. E. 705, did not involve a denial or cutting off of access to the highway affecting the abutting property owners, nor a change in the servitude or use of the existing highway. Nor do appellant's subsequently

---

4. Burns' §36-3105 (1949 Repl.), *supra.*

cited cases of *State* v. *Ensley et al.* (1960), 240 Ind. 472, 164 N. E. 2d 342, *Lowe* v. *City of Lawrenceburg* (1912), 177 Ind. 629, 98 N. E. 637, and *Dantzer et al.* v. *The Indianapolis Union Railway Company* (1895), 141 Ind. 604, 39 N. E. 223, 34 L. R. A. 769, involve a denial or cutting off of access to the highway affecting abutting property owners. In fact, in the Ensley case we specifically recognized the rule that an abutting property owner has an easement of ingress and egress to and from a public highway which constitutes a property right and cannot be substantially or materially interfered with or taken away without due compensation, citing *State, etc.* v. *Marion Cir. Ct. et al.* (1958), *supra.* See also: *Huff et al.* v. *Ind. State Hwy. Comm.* (1958), 238 Ind. 280, 149 N. E. 2d 299.

The facts of the Ensley case were indeed distinguishable from the case at bar as in the former case the property owners were claiming a property right in the free and unrestricted flow of traffic passing their premises and which was diminished by the installation of the divider strip in the highway. Such regulations concerning the free flow of traffic have been sustained under the police power. We refused in that case to equate such alleged "right" to the free flow of traffic with the property rights of ingress and egress. While conceding that an abutting owner may not be entitled to damages for a mere "partial limitation or obstruction" to his right of access, this cannot be extended to include substantial or material interference or cutting off of the right of ingress and egress. See also: *Ind. Toll Road Comm.* v. *Jankovich et al.* (1963), 244 Ind. 574, 193 N. E. 2d 237, in which we recently held the use of air space is a property right which cannot be taken away without compensation. In that case we stated (p. 582 of 244 Ind., and p. 241 of 193 N. E. 2d) :

" . . . mere regulation under the police power which can be modified at the discretion of regulating authority is wholly different from the taking or appropriating of private property by the government for a specific public use. The latter can be effected only if compensation is provided. *Pennsylvania Coal Co.* v. *Mahon* (1922), 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322; 1 Metzenbaum, Law of Zoning 70-76 (2d ed. 1955), *Griggs* v. *Allegheny, supra.* [369 U. S. 84, 82 S. Ct. 531, 7 L. Ed. 2d 585, reh. den., 369 U. S. 857, 82 S. Ct. 931, 8 L. Ed. 2d 16.]"

Appellant's argument that appellees are not entitled to compensation in eminent domain in the case before us because no actual land was taken is not meritorious, as appellees were abutting owners and had property rights of ingress and egress in Madison Avenue, which under the above statutes and the settled decisions of this state could not be cut off without compensation.

The fact that appellees still have a somewhat limited access to Caven Street at the south does not compensate them for their loss of ingress and egress to the west to and from Madison Avenue, nor does the fact that appellant has made a small portion of old Madison Avenue into a dead-end service road proceeding solely into Caven Street at the south, permit the cutting off of ingress and egress in Madison Avenue without compensation. Appellant has, by the erection of a fence and barricade and the construction of an embankment, cut appellees off from the highway known as Madison Avenue. Appellant cannot equate appellees' previous right of access to old Madison Avenue which led to the north and south through the entire city of Indianapolis, with access solely to the narrow dead-end service road which leads nowhere to the north and nowhere to the south except to Caven Street.

Whether appellant calls the dead-end service road old Madison Avenue or not, in reality it is not the highway to which appellees previously had access. The injury to appellees is special and peculiar and is different in this case from that sustained by the public at large. The construction work done on old Madison Avenue and the land immediately west thereof to make a new super highway out of old Madison Avenue, and the creating of obstructions and embankments cutting off appellees' right of ingress and egress to and from the highway, was a taking of appellees' property rights for which they were entitled to compensation in eminent domain.

Appellant has argued that appellees' action in reality is in tort against the State (for which the State has not consented to be sued) instead of under the eminent domain statutes, as there was no taking of appellees' land. Appellant's contention is untenable, as we have heretofore refuted appellant's contention by demonstrating there was a taking of an interest in land in the cutting off of the right of ingress and egress of appellees as abutting property owners.

Appellant has further contended that insofar as giving a right against the State is concerned, the Eminent Domain Act of 1905[5] could not be enlarged by the Eminent Domain Statute of 1945[6] as any such construction of the 1945 Act would be outside the title of the Act in violation of §19, Art. 4, of the Indiana Constitution.

The full title to the Act of 1945 is as follows:

"AN ACT concerning highways and streets; conferring authority on the State Highway Commission of Indiana, counties, and municipalities; pro-

5.  Burns' §3-1711 (1946 Repl.), *supra*.
6.  Burns' §36-3105 (1949 Repl.), *supra*.

viding for cooperation with the Federal Government and for the planning, designation, establishment, use, regulation, alteration, improvement, maintenance, and vacation of limited access facilities; *the acquisition of lands required therefor;* the restriction of intersections and control of approaches; the establishment of local service roads; the prohibition of certain acts thereon and provision for penalties therefor; and for other purposes; and declaring an emergency." (Emphasis supplied.)

The title evinces the intent of the legislature to deal with the acquisition of lands for highway purposes and in particular those involving limited access facilities. It necessarily encompasses within the words "the acquisition of lands" the acquiring of interests in real estate such as rights of access, particularly when the title also provides the establishment of limited access facilities.

It is difficult to follow appellant's line of argument that no authority or consent to sue the State was contemplated by the title to the Act although it provided for the acquisition of land by the State for streets and highways. Just how the State was to acquire land or interests therein without payment of compensation, whether compelled by suit or not, is not evident from this portion of appellant's argument. On the contrary, consent or authority to sue the State would appear to be incidental to the general subject stated in the Act and therefore properly included within the general title of the Act. In *Alanel Corp., etc.* v. *Indpls. Redevelop't Comm. et al.* (1958), 239 Ind. 35, 154 N. E. 2d 515, this Court held the title of the 1945 Redevelopment Act, although it made no mention of appropriation of property by eminent domain, was sufficiently broad to justify constitutionally the provision in the Act for eminent domain proceedings.

The title is not subject to the constitutional infirmity urged by appellant, and it further appears that the inverse condemnation statute of 1905[7] providing for the collection of damages against the State is applicable where an interest in land is in existence which has been or may hereafter be taken for public use, without first having been appropriated under the Act. The case at bar appears to fit these requirements.

Appellant has finally argued that the damages awarded were excessive as the trial court improperly included interest from April 12, 1956, to the date of judgment.

Appellant's position is not well taken, for the law allows interest on any damages awarded in eminent domain proceedings from the date the State took possession of the condemned property. *State* v. *Stabb* (1948), 226 Ind. 319, 79 N. E. 2d 392; *State* v. *Smith et ux.* (1957), 237 Ind. 72, 143 N. E. 2d 666; *Seaboard Air Line R. Co.* v. *U. S.* (1923), 261 U. S. 299, 306, 43 S. Ct. 354, 356, 67 L. Ed. 664, 670. Here the record discloses the date of the taking of appellees' access was on or about April 12, 1956, and the Court's judgment is to the same effect.

Judgment affirmed.

Achor, Arterburn and Myers, JJ., concur; Jackson, J., concurs in result.

Note.—Reported in 196 N. E. 2d 740.

---

7. Burns' §3-1711 (1946 Repl.), *supra.*