ELSON, ETC., ET AL. *v.* CITY OF INDIANAPOLIS, ETC.

[No. 30,376. Filed March 9, 1965. Rehearing denied April 13, 1965.]

*Carl E. Stilwell* and *Stilwell, Hackemeyer & Life,* of Indianapolis, for appellants.

*John C. O'Connor,* of Indianapolis, for appellee.

*Edwin K. Steers,* Attorney General, and *William C. Barnard,* Deputy Attorney General, attorneys for State of Indiana as Amicus Curiae.

JACKSON, J.—Appellee instituted this action against the appellants for the condemnation of appellants' real estate, for a determination of the fair market value of said real estate and the damages resulting from said condemnation. Anchor Federal Savings and Loan Association was made a party defendant below by reason of its mortgage lien on appellants' real estate.

The action was commenced with the filing of appellee's complaint on March 7, 1962, for the condemnation of appellants' real estate. Subsequently, on March 20, 1962, the court executed its entry on appellee's com-

plaint condemning appellants' real estate, appointing appraisers, and ordering said appraisers to assess the damages sustained by appellants by reason of the condemnation and appropriation.

The report of the appraisers was filed with the court on April 16, 1962, fixing the total amount of appellants damages in the sum of $43,000.00.

April 19, 1962, appellants filed exception to the appraisers award on the theory that the damages assessed were too low. Appellee filed exceptions to the award on April 23, 1962, on the theory that the damages assessed were excessive and that the amount of the appraisement was in excess of the true cash value of the property.

Appellants filed their request for trial by jury on April 19, 1962, and the cause was submitted to the jury on the issues formed on October 15, 1962. At the conclusion of all the evidence the jury returned its verdict awarding the appellants the sum of Forty Thousand Seven Hundred Forty-two Dollars and Fifty-eight cents ($40,742.58). The court entered judgment on said verdict, finding that the allegations of the appellee's complaint for condemnation were true; that the appellee was entitled to condemn and appropriate the real estate described in the complaint for redevelopment purposes; that of the amount of the award the defendant, Anchor Federal Savings and Loan Association was entitled to be paid the full amount of its valid mortgage on the premises in the sum of $5,046.47 as of October 31, 1962, with interest thereon from said date in the amount of $0.924 per day until paid; that the balance of the award after the payment of said mortgage lien was to be paid to appellants.

Thereafter, on November 16, 1962, appellants filed their motion for a new trial. Such motion for new trial encompasses sixteen pages of the record and is directed

to alleged error of law in the rulings of the court on proffered testimony as to values and to certain instructions given and refused. Brevity does not permit setting out in full all the grounds urged. We have considered the questions raised on the admission and exclusion of evidence in such motion and conclude that the rulings of the court thereon were proper. Appellants also raise questions in the motion for new trial on the giving and refusing to give certain instructions therein set forth. Appellant alleges error in the giving of certain instructions wherein the time for the determination of value was fixed as of March 7, 1962. Appellant contends the date on which determination of value should have been made as of June 3, 1959.

It therefore appears that there are involved in the case at bar two questions that require a determination in this action, viz:

1. Should the date on which the value of the property here condemned have been fixed as of June 3, 1959, as contended by appellants or as of March 7, 1962, as directed by the instructions to appraisers by the order of the trial court made on March 23, 1962?

2. Are appellants entitled to recover damages for the loss of their business?

Determination of these questions will, we think, eliminate the necessity of considering other questions inherent herein.

In arriving at a determination of the question posed at one above we need refer to the statute. Acts 1945, ch. 276, §17, p. 1219, being §48-8517, Burns' 1963 Replacement reads as follows:

"Whenever the commissioners shall deem it necessary to acquire real estate in any blighted area by the exercise of the power of eminent domain, they shall adopt a resolution setting out their determination to so proceed and directing their attorney to file a petition in the name of the

city on behalf of the department of redevelopment, in the circuit or superior court of the county in which such real estate is situated, praying that appraisers be appointed to appraise the value of such real estate deemed necessary to be acquired to carry out the redevelopment plan. Upon the filing of said petition the owner or owners of such real estate shall have the notice provided by law in the case of the commencement of a civil action. It shall be sufficient to make parties defendant to such petition all persons who are in possession of said real estate and those who appear to be the owners, or have any interest therein, as shown by the tax duplicates and records in the offices of the auditor and recorder of such county.

"After such notice shall have been given the court shall appoint three [3] resident freeholders of the county in which the real estate is situated to appraise the value of the same. Before entering upon their duties said appraisers shall take and subscribe an oath that they will honestly appraise said real estate at its fair cash value, and shall make a report of their appraisement within a time fixed by the court. If said appraisers fail for any cause to make such report within the time so fixed, the court may extend the time or may appoint other appraisers.

"When such report shall have been filed, any of the parties defendant to said petition may, within ten [10] days after the filing of such report, file exceptions to the same, alleging that the appraisement of said real estate as made by said appraisers is not the true cash value of the same, and the cause shall proceed to issue, trial and judgment as in civil actions. Upon the trial of such exceptions, the court shall have the power to revise, correct, amend or confirm such appraisement in accordance with the finding of the court, or verdict of the jury, and may make such further orders and render such finding and judgment as may seem just. Such judgment shall be appealable by either party to the Appellate or Supreme Court as in civil cases.

"If the commissioners shall pay to the clerk of the court the amount fixed by the judgment, then the commissioners may take possession of and

hold the interest in the real estate so appropriated for the use of the department of redevelopment, subject to a review of the amount so paid in any appeal taken as herein provided.

"When the value of said real estate shall have been finally determined by the court, the commissioners may cause the amount so determined to be paid to the clerk of the court who shall receive the money and hold it in court for the use of the owner or owners, or other person or persons adjudged to be entitled thereto. Upon such payment to the clerk of the court and the filing of the receipt therefor in open court as a part of the proceedings in said cause, the court shall direct the clerk of the court to execute a deed conveying the title of such real estate to the city 'for the use and benefit of its department of redevelopment.' The costs of the proceeding shall be paid by the commissioners, except in case of contest the additional costs thereby caused shall be apportioned as the court shall adjudge."

It is thus apparent that a certain area may be declared a "blighted area" and yet the property therein need not be taken at the time of the declaration or at any other time. In the event that it is determined to take such property, then we are governed by the statute fixing the time when evaluation of the property shall be made. Acts 1935, ch. 76, §3, p. 228, being §3-1706, Burns' 1946 Replacement reads as follows:

"Such appraisers shall take an oath that they have no interest in the matter and that they will honestly and impartially make such assessment. After being so sworn, the judge shall instruct said appraisers as to their duties as such and the measure of the damages and benefits if any they allow.

"They shall determine and report:

"First. The fair market value of each parcel of property sought to be appropriated, and the value of each separate estate or interest therein;

"Second. The fair market value of any improvements pertaining to the realty, if any, on the portion of the real estate to be condemned;

"Third. The damages, if any, to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated;

"Fourth. Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff.

"Fifth. In case the land is sought to be taken by the state or by a county, for a public highway or by a municipal corporation for a public use that confers benefits on any lands of the owner, the report shall also state the benefits which will accrue to each parcel of property, set opposite each description of the same, whether described in the complaint or not. In estimating the damages specified in the foregoing first, second, third and fourth clauses, no deduction shall be made for any benefits that may result from such improvement, excepting in case of a condemnation by the state or by a county, for a public highway or by a municipal corporation for public use, the benefits, if any assessed, shall be deducted from the amount of damage allowed, if any, under the foregoing third and fourth clauses; and the difference, if any, plus the damages allowed under the foregoing first and second clauses shall be the amount of the award, but in no case shall the damage awarded be less than the damages allowed under the foregoing first and second clauses. Upon the trial of exceptions to such award by either party a like measure of damages shall be followed. For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of the notice provided in section three [§3-1703], and its actual value, at that date, shall be the measure of compensation for all property to be actually taken and the basis of damages to property not actually taken but injuriously affected, except as to the damages stated in the fourth clause hereof."

In view of the factual situation present in the case at bar, we are of the opinion that appellant has waived any question as to the date on which the value of the property condemned is to be valued by failing to object to the instructions to appraisers given by the court

on March 23, 1962, wherein the court directed the appraisers to fix the value thereof as of March 7, 1962, and as of no other time.

Question number two, we think, has heretofore been determined adversely to appellants contention ■ by the greater weight of authority in this country.

"The general rule in this country is that such business and the fruits thereof are too uncertain, remote and speculative to be used as the criterion of the market value of the land upon which the business is conducted. Neither the value of such business nor the profits therefrom are ordinarily considered insofar as the market value of the land upon which the business is conducted is concerned, . . ." Nichols on Eminent Domain, Vol. 4, §13.3 [1], pp. 443, 445, 446.

We quote from a Texas case on this point. In *Reeves* v. *City of Dallas* (1946), Tex. Civ. App. 195 S. W. 2d 575, 582:

"Appellant's contention is that under the Constitution, Art. 1, Sec. 17, Vernon's Ann. St., and relevant statutes, Art. 3265, R.S., his damage may be measured by the loss of profits which he expected would accrue to the leasehold during the unexpired term of the lease. If such contention is sound, why stop at the end of the unexpired term of the lease, if, perchance, the business he was then conducting should have continued to the end? If the anticipatory profits of the business, or loss of the business for the unexpired term could be determined, say at $200,000 as claimed by appellant, then, for an indefinite period after the expiration of the lease, appellant as a holdover tenant, or the owner, or landlord, would have a claim for a staggering amount. The right or position of the owner of the land and improvements is not circumscribed by the tenancy for years; and, therefore, if the rule should be established that a tenant is allowed to recover his anticipated profits or loss of business in futuro for the term of his lease, then certainly a fee owner conducting

a business on his own property should be entitled to profits in futuro, measured by the duration of his anticipated ownership—theoretically in perpetuity—certainly for the life expectancy of the owner. Stating the rule contended for by the appellant, and realizing its consequences, justifies its rejection under any reasonable consideration." *United States* v. *General Motors Corp.* (1945), 323 U. S. 373; *Eljay Realty Co.* v. *Argraves*, (1962), 149 Conn. 203, 177 A. 2d 677; *City of St. Louis* v. *Paramount Shoe Mfg. Co.* (1943), 237 Mo. App. 200, 168 S. W. 2d 149, 154; *Cleveland Boat Service Inc.* v. *City of Cleveland* (1956), 165 Ohio St. 429, 136 N. E. 2d 274, 275; *Wilson* v. *Iowa State Highway Commission* (1958), 249 Iowa 994, 90 N. W. 2d 161, 169.

It is true that in Indiana we have a few cases that are in apparent conflict with the general rule as above enunciated. This Court in a recent case, *State* v. *Geiger & Peters, Inc.* (1964), 245 Ind. 143, 196 N. E. 2d 740, permitted recovery in an action in inverse condemnation. There the recovery was based on an alleged property right in ingress and egress over a city street to a limited access highway. In *State* v. *Geiger & Peters, Inc.*, *supra*, no physical property of appellees was taken, but a portion of an abutting city street was appropriated in the construction of the limited access highway, resulting in the loss of use thereof by appellees in the ordinary conduct of their business operations. The factual and legal situations in the case at bar and the cited case are entirely different and prohibit here the application of the principles discussed and applied in *State* v. *Geiger & Peters, Inc.*, *supra*. In that case the statute expressly included "rights of access" as being compensible under the act. In the case at bar the entire property was taken and the question of access is therefore not here in issue.

There is also an apparent exception to the general rule in *State* v. *Stabb* (1948), 226 Ind. 319, 79 N. E.

2d 392, wherein Stabb and Stabb, husband and wife, were the owners of real property condemned by the State on which was situated their residence and which was also used by them in the operation of a retail store and gasoline station. The questions raised there on appeal were primarily addressed to the erroneous rulings of the trial court with respect to the giving and refusing of certain instructions, discussed in the cited case, and the further grounds that there was error in the assessment of the recovery in that it was too large, in that it was based on improper elements of damage, and finally that the verdict was not sustained by sufficient evidence and was contrary to law. A careful reading of *State* v. *Stabb, supra,* clearly indicates that the prime question concerned the number of gallons of gasoline sold on the involved premises and the annual volume of business done at the store located thereon. There were no objections to those questions, hence the appellant would be estopped by waiver to question their propriety on appeal. That being the case, appellant would not be entitled to instruction No. 13 and the court properly refused to give the same. The court in the cited case, *State* v. *Stabb, supra,* at page 324, discusses further the instruction complained of and says:

" . . . Clauses one, two and three of this section cover all the damages sustained by the property taken and the residue; therefore, clause four must refer to damages other than damages to the property involved. It includes any *direct consequential damages* suffered by any person due to the construction of the improvement." [Emphasis supplied].

The definition of "consequential damages" as found in Black's Law Dictionary, 4th Edition, "[s]uch damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from some of the

consequences or results of such act", prohibits consideration of the evidence of profits derived from a business conducted by the owner on the land sought to be appropriated and cannot be considered in ascertaining its value under the circumstances attendant in the cited case, consequently that portion of the *Stabb* case is dicta and should be and is disregarded. In arriving at the dicta enunciated, the Stabb case seeks to disapprove the case of *Illinois Central R. Co.* v. *Howard* (1925), 196 Ind. 323, 147 N. E. 142. Such disapproval so expressed was erroneous. Thus, there is no conflict with the *Stabb* case in the finding in the case at bar.

There is also an apparent conflict with the general rule in *City of Evansville* v. *Bartlett et al.* (1962), 243 Ind. 464, 186 N. E. 2d 10, wherein appellants acquired the fee in real estate owned by appellee Bartlett and the leasehold interests of the appellees, Debes and Clements, by the exercise of the power of eminent domain. The question of the right of appellees to introduce evidence as to profits of a tavern business operated by the appellees, Debes and Clements, was in issue and such evidence was competent in order to permit the court to adjudicate the rights of the parties to their respective interests in the total amount of the award. On petition for rehearing in that cause [186 N. E. 2d 799] the court said:

> "It is not our intention to hold that two properties were taken, but only that there were two interests in one property, nor did we intend by the above language, either to overrule or modify *State etc.* v. *Montgomery Cir. Ct., etc. supra.*
>
> "In considering the question as to the admissibility of evidence pertaining to the profits from the business of lessees, it must be kept in mind that this was a condemnation action instituted against a single tract of land in which there are two interests, including, under the leasehold, a going business of the appellees, Debes and Clements. In such a situation it was the duty of the

court to fix the fair cash market value of the entire property as between the condemnor and all the defendants. It then becomes the duty of the court to apportion the same according to the respective interests of the defendants. The evidence here in question was admissible as tending to show the value of the lessees' interest for the purpose of apportioning the total award between the two interests involved. The award stands in the place of the land and the owners of each interest may recover out of the award the proportionate interest which they had in the land condemned." *City of Evansville* v. *Bartlett, et al.* (1962), 243 Ind. 464, 186 N. E. 2d 10, 186 N. E. 2d 799.

Thus, by an examination of the issues, it is apparent that in this case there is in fact no conflict with the general rule.

Finally, in the case at bar, there is only one owner whose property is being taken by the exercise of the right of eminent domain. Assuming as we have to, that the appraisers did their duty conscientiously and that the jury fairly considered the evidence adduced in the cause, it is apparent that there not only was no necessity for the introduction of evidence as to the value of the business, as there could be no apportionment between defendants as there was only the one interest being acquired, but in arriving at the award it is presumed the jury determines the award on the basis of evidence as to the best use to which the land could be put. That being true, no evidence as to the value of the business should be permitted in the case at bar. To do so would permit the condemnee to recover a value already taken into account in arriving at the amount of the award.

The judgment is affirmed.

Myers, J., concurs.

Achor, J., concurs with opinion.

Arterburn, C. J., concurs in result.

Landis, J., dissents.

### CONCURRING OPINION

ACHOR, J.—As stated in the majority opinion, the only question reserved by the appellant for consideration of this court is whether loss of profits realized from property appropriated by condemnation is a proper element to be considered in determining the amount of damages recoverable by appellants because of such appropriation.

It is my opinion that loss of profits is not an element of damages properly to be considered under such circumstances, notwithstanding language to the contrary in the case of *State* v. *Stabb* (1948), 226 Ind. 319, 79 N. E. 2d 392. My opinion is grounded upon several reasons:

1. The historical circumstances which apparently gave rise to the amendment of the statute by the addition of the fourth clause thereof [Burns Ind. Stat. Anno. §3-1706 (1946 Repl.)], as enacted in 1905, support this conclusion. The statute, as amended, which now prescribes the method of determining damages in condemnation proceedings, reads as follows:

"First. The fair market value of each parcel of property sought to be appropriated, and the value of each separate estate or interest therein;

Second. The fair market value of all improvements pertaining to the realty, if any, on the portion of the real estate to be condemned;

Third. The damages, if any, to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated;

Fourth. Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff."

Prior to the enactment of the fourth clause to the above statute in 1905, this court, in a series of decisions, held that there could be no recovery for damages

to uncondemned private property which resulted from *nonnegligent* construction of streets, drains and sewers, or other public improvements. See: *Town of Princeton* v. *Gieske* (1883), 93 Ind. 102; *Cummins* v. *City of Seymour* (1881), 79 Ind. 491; *City of Valparaiso* v. *Hagen* (1899), 153 Ind. 337, 54 N. E. 1062. However, the enactment of clause four appears to express a clear legislative intention that thereafter compensation should be paid to any persons whose property was damaged as the result of some public construction without regard to whether any of his land was taken or not and even though the construction was completed as proposed— that is without regard to any negligence in such construction. This court so construed this clause of the act in the case of *State* v. *Ahaus* (1945), 223 Ind. 629, 63 N. E. 2d 199.

The statute uses the phrase "Such other damages, if any, as will result . . . from the construction of the improvements in the manner proposed . . . " It is argued that the term "such other damages," justifies the allowance of damages for loss of profits, good will, etc., from the operation of the business affected. However, the term had a fixed legal meaning at the time which excluded losses of profits, good will or business as *damnum absque injuria*. See: 4 Nichols on Eminent Domain, §13.3, pp. 441-42 (4th Ed. 1962). We must assume that the legislature, when it adopted this clause of the statute, intended that the term "damages" have its accepted legal meaning and it should be so construed by this court. *Gross Income Tax Div.* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N. E. 2d 415; 26 I. L. E. Statutes, §117, pp. 321-22.

2. The clear and accepted definition of the words used in the fourth clause do not authorize the recovery of damages for loss of good will or business profits en-

joyed on the land appropriated. The fourth clause provides in part for:

" . . . damages, if any, as will result . . . from the construction of the improvements in the manner proposed . . . "

Significantly, it does not provide for damages resulting from the condemnation or appropriation of the property, but, rather, damages "as will result" (future tense) from the *construction* of the improvements in the manner proposed. The word construction has a clear and distinct meaning as contrasted with the words condemnation or appropriation, which was all that was done in the instant case. Construction is defined in Webster's New International Dictionary as follows:

"2 a: the act of putting parts together to form a complete integrated object: Fabrication; b (1): the form or manner in which something has been put together: Design . . . "

Thus, damages were properly allowed under this provision of the statute in the case of *State* v. *Ahaus, supra* (223 Ind. 629, 63 N. E. 2d 199), where lands not appropriated were flooded by reason of the *construction* of the dam as proposed. However, in this case which involved the demolition of properties in a slum clearance project, no "construction" was involved which thereafter resulted in damage to appellant's property.

3. It is stated in *State* v. *Stabb, supra* (226 Ind. 319, 79 N. E. 2d 392), that a provision similar to that here under discussion which appears in statutes of other states has been liberally construed, leaving the inference that in such states damages for loss of good will, profits or business have been considered proper elements of damage. In support of this proposition the *Stabb* case cites the cases of *Mitchell* v. *United States* (1924), 267 U. S. 341, 69 L. Ed. 644, 45 S. Ct. 293, and *City of Oakland* v. *Pacific Coast Lumber & Mill Co.* (1915),

171 Cal. 392, 153 P. 705. However, my investigation of these and other cases does not support the conclusion reached in the *Stabb* case, *supra*. I find no state in which damages for loss of good will and profits from the operation of a business have been allowed, except and unless a particular statute of that state expressly authorizes such damages. See: Florida Statutes Anno. (1963 Supp.), §73.10(4); see also: 19 Vermont Statutes Anno. §221(2).

4. The general rule which denies the recovery of damages for loss of good will and business profits, except as expressly authorized by statute, is supported by many substantial reasons: (1) Only the land and improvements thereon are taken by the condemning authority; (2) the good will of business involved and the business ability and personality of the proprietor of that business, which are primary factors in both the amount of business and profits realized therefrom, remain with the proprietor even though the situs of the business is taken. See: 4 Nichols on Eminent Domain, §13.31, pp. 452-53, 455 (3rd Ed. 1962); 1 Orgel on Valuation under Eminent Domain §155, p. 646 (2nd Ed. 1953).

We judically know that in many instances the proprietors of businesses, when the properties in which their businesses are operated are taken, relocate such businesses in equal or better locations and continue to enjoy the good will and reputation of their former businesses.

Because personality, business ability and good will created in business play so large a part in determining its value, this court, in the case of *Hagemann et al.* v. *City of Mount Vernon et al.* (1958), 238 Ind. 613, 154 N. E. 2d 33 (which superseded the *Stabb* case, *supra*), held that loss of business profits was too speculative an item to be considered in determining damages in

the condemnation proceedings. This decision is in accord with other established authority on the subject. See: *United States* v. *Petty Motor Co.* (1946), 327 U. S. 372, 66 S. Ct. 596; *Boston Belting Co.* v. *City of Boston* (1903), 183 Mass. 254, 67 N. E. 428; 4 Nichols on Eminent Domain §162; 18 Am. Jur. Eminent Domain §§259, 261.

For these reasons, I would restrict the rule of the case of *State* v. *Stabb, supra,* to the facts which were actually before the court, to-wit: That evidence of the volume of business may be admitted to prove the suitability of the property for a particular purpose, but for no other purpose.

NOTE.—Reported in 204 N. E. 2d 857.