ALSA ASSOCIATES *v.* CITY OF NEW HAVEN
(AC 25000)

Bishop, DiPentima and Hennessy, Js.

Argued February 10—officially released June 7, 2005

*Frances B. Granquist*, for the appellant (plaintiff).

*Michael A. Wolak III*, assistant corporation counsel, for the appellee (defendant).

*Opinion*

HENNESSY, J. This is an appeal by the plaintiff, ALSA Associates, from the judgment of the trial court increasing the statement of compensation filed by the defendant, the city of New Haven, as a result of a condemnation proceeding involving the plaintiff's real property. On appeal, the plaintiff claims that the court improperly failed to consider several factors in its valuation of the property. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. On November 21, 2002, pursuant to General Statutes §§ 7-148 and 8-129 et seq., the defendant filed a statement of compensation in the amount of $150,000 for the taking of the property known as 243 Grand Avenue (property). The plaintiff appealed to the Superior Court pursuant to General Statutes § 8-132 (a), claiming that it was aggrieved by the inadequacy of the award.

At the hearing before the court, the plaintiff presented evidence of the fair market value of the property, including the lease between the plaintiff and Connecticut Con-

venience, Inc.,[1] for a convenience store on the property, a purchase agreement for the property between the same parties[2] and an appraisal by the Michaud Company (Michaud) valuing the property at $320,000. The defendant presented an appraisal by O. R. & L. Appraisals and Consulting, valuing the property at $150,000. After a hearing, the court increased the amount of compensation by $50,000, plus interest. This appeal followed.

I

The plaintiff first claims that the court improperly found that the purchase agreement for the property was unexecuted and that the option to renew the lease had not been exercised. We disagree.

"To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence." (Internal quotation marks omitted.) *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 642, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005). "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses. . . . We afford great weight to the trial court's findings because of its function to weigh the evidence and determine credibility." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 53, 861 A.2d 473 (2004).

---

[1] The lease was signed on June 26, 1991, for a term of ten years, with an option to renew for an additional five years.

[2] The purchase agreement recites a purchase price of $330,000.

A

The plaintiff argues that the court's finding that the purchase agreement for the property was unexecuted[3] is clearly erroneous. We are not persuaded.

Black's Law Dictionary defines executed as "[c]ompleted; carried into full effect; already done or performed; signed . . . ." Black's Law Dictionary (6th Ed. 1990). Similarly, an executed contract is defined as a "[c]ontract which has been fully performed by the parties." Id. The plaintiff argues that because the contract was signed by the parties, it was executed, and the court's finding that the contract was unexecuted is clearly erroneous. It is undisputed, however, that the contract was never performed fully by the parties due to the eminent domain proceedings initiated by the defendant. As Black's Law Dictionary indicates, there is more than one meaning for the term "execute." Because the plaintiff failed to seek an articulation as to which of the two equally plausible meanings the court intended, we cannot conclude that the court's finding of fact was clearly erroneous. As a result, the plaintiff's claim must fail.

B

The plaintiff next argues that the court's finding that the option to renew the lease had not been exercised was clearly erroneous. Again, we are not persuaded.

At trial, the plaintiff presented evidence via the testimony of Sam Levine, the plaintiff's general manager, that Connecticut Convenience, Inc., exercised the option to renew the lease of the property. After

---

[3] In its memorandum of decision, the court stated that the plaintiff "introduced into evidence an undated agreement to purchase the subject [property] for $330,000 around July, 2001. However, when it was learned that the subject property was going to be condemned, the contract served no purpose and cannot be used for value. This court cannot base fair market value on an unexecuted document."

acknowledging Levine's testimony, however, citing the terms of the lease,[4] the court stated that "[i]f the tenant wishes to exercise [the option to renew], it must do so by furnishing the landlord with written notice of exercise of the option to renew no later than 180 days prior to the expiration of the term of the lease. I pointed out to you that there was nothing put in evidence to establish that the exercise had taken place for the option."

As stated previously: "[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, supra, 272 Conn. 53. Given that role, we must give great weight to the court's refusal to rely on the self-serving statement of Levine regarding the exercise of the option to renew. Even after the plaintiff was notified that Levine's testimony alone would be insufficient, the plaintiff did not seek to introduce either corroborating testimony or the written notice of the exercise of the option required by the lease. We therefore cannot conclude that the court's finding that the option to renew had not been exercised was clearly erroneous.

II

The plaintiff next claims that the court failed to consider the sales contract, the lease agreement and its appraiser's use of historical sales data, and improperly relied on the opinion of the defendant's appraiser in arriving at the valuation of the property. We disagree.

---

[4] The lease provided in relevant part: "Option to Renew. Provided that Tenant is not in default of this lease, Tenant shall have the option of extending and renewing this Lease for one (1) additional period of five (5) years (the 'Renewal Period'). If Tenant wishes to exercise this option, it must do so by furnishing Landlord with written notice of exercise of the option to renew no later than one hundred eighty (180) days prior to the expiration of the term of this Lease. . . ."

"In condemnation proceedings, the referee is charged with the duty of making an independent determination of the value of the property involved and its fair compensation. . . . He may accept or reject the testimony of an expert offered by one party or the other in whole or in part." (Citations omitted; internal quotation marks omitted.) *Hayes* v. *Coventry*, 2 Conn. App. 351, 353–54, 478 A.2d 620 (1984). "[N]o one method of valuation is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. [T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has broad discretion in reaching such conclusion, and [its] determination is reviewable only if [it] misapplies or gives an improper effect to any test or consideration which it was [its] duty to regard. Such determinations are findings of fact, and therefore must stand unless clearly erroneous." (Internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 120, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003).

## A

The plaintiff argues that the court failed to consider the sales contract and the lease agreement when valuing the property. As previously determined, the court's findings that the sales contract was unexecuted and that the option to renew the lease was not exercised were not clearly erroneous and, thus, we are bound by those findings of fact. Given that, the court was not required to rely on those documents in arriving at its independent

valuation of the property, and we will not overturn its decision for its failure to do so.

## B

The plaintiff next argues that the court improperly found that the use of historical calculations of gasoline sales from the pumps at the convenience store to value the property would be too speculative. Again, we are not persuaded.

"[I]t is generally recognized that neither the past nor estimated future profits of a business are reliable evidence of the value of the land on which the business is located because business profits depend on so many factors that their effect on the market value of the real estate is too remote." *Eljay Realty Co.* v. *Argraves*, 149 Conn. 203, 207, 177 A.2d 677 (1962). Here, the court properly concluded that the use of historical profits was speculative and that the comparable sales approach was more appropriate.

Throughout the hearing, the plaintiff presented testimony as to the profits it received as a wholesaler of gasoline, rather than an owner-operator of a gasoline station. Additionally, the plaintiff failed to present any evidence as to how those profits were calculated. In its memorandum of decision, "[t]he court concluded from all the evidence adduced at trial that the income approach was unreliable for value because of the complexity of the ownerships of the gasoline station and the convenience store. . . . The figures shown by Michaud were a creation of Michaud based upon unsupported breakdowns for the costs of gasoline to arrive at reliable net income. Realistic figures were not given, and the court rejects the evaluation based upon the income methodology." On the basis of our review of the evidence presented, we cannot conclude that this determination was clearly erroneous.

The plaintiff's final argument is therefore reduced to a claim that the court improperly credited the defendant's expert witness over the plaintiff's expert witness. The court found that the comparables used by Michaud were "substantially in better locations than the subject [property] (photographs in the Michaud report show considerable better kept properties . . . )." (Citation omitted.) On the other hand, the court found that the comparables used by the defendant's expert were "more appropriate and representative in this case." On the basis of our review of the evidence, giving deference to the court's determinations of credibility, we cannot find those conclusions to be clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.