[No. 37150.    Department One.    August 27, 1964.]

GEORGE H. KAHIN, *Appellant*, v. THE CITY OF SEATTLE, *Respondent.*[*]

*Paul Cressman, John Burgess,* and *Douglas Hartwich* (of *Short, Cressman & Cable*), for appellant.

*A. L. Newbould* and *John P. Harris,* for respondent.

[*]Reported in 395 (2d) 79.

BARNETT, J.†—Appellant brought this action against the city of Seattle to recover damages for the limitation of free and convenient access to and from his service station in Seattle.

The property, which has since been acquired by the state for highway purposes, is triangular in shape. It has 45 feet of north frontage on N.E. 75th Street, 86 feet of east frontage on Bothell Way, and 75 feet of west frontage on Roosevelt Way.

In 1960, Bothell Way and Roosevelt Way were converted from two-way streets to one-way southbound streets, beginning at N.E. 75th. These two streets merge at a point south of appellant's property. Pursuant to this change, traffic markers 12 inches in diameter and 2¾ inches high were used by the city to direct the flow of traffic. Markers were placed on the midline of Roosevelt Way about 10 feet apart to keep the southbound traffic in the right, or west lane, with two larger openings of 17 and 18 feet opposite appellant's two driveways on Roosevelt Way. Another series of markers extended from appellant's property to the midline of Roosevelt Way forming an arc with markers placed about 5 feet apart. The purpose of these markers was to direct a vehicle leaving the station into the southbound lane. A driver leaving appellant's south driveway, for example, could follow the direction of the arc and join the southbound traffic of Roosevelt Way by crossing the 17-foot space in the midline to enter the stream of traffic. A driver entering appellant's station from Roosevelt Way could make a left turn into the station by driving through the space in the midline markers or driving over the markers. It is agreed by the parties that there is no law forbidding vehicles from driving over this type of traffic regulator.

The trial court entered summary judgment dismissing the action. The sole issue on appeal is whether the appellant is entitled to compensation from the city for a damag-

† Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ing or taking of his property under Const. Art. 1, § 16 (amendment 9).

Appellant contends that there existed factual issues which could not be determined adversely to him as a matter of law. The claimed factual issue is whether or not there was an unreasonable interference with appellant's ingress and egress.

A diagram of the area entered as an exhibit, showing the traffic markers in question, conclusively demonstrates that the markers were designed to warn, regulate, guide and facilitate traffic entering the intersection. It is also apparent from the diagram that there was no physical barrier to appellant's access, and that vehicles on Roosevelt Way were not prevented from driving onto or leaving his property.

This court, in *Walker v. State*, 48 Wn. (2d) 587, 590, 295 P. (2d) 328 (1956), held that the owner of a motel was not entitled to compensation when the state installed a center-line curb preventing tourists from making left-hand turns onto the motel property which abutted the highway. The court said:

"Plaintiffs have no property right in the continuation or maintenance of the flow of traffic past their property. They still have free and unhampered ingress and egress to their property. Once on the highway, to which they have free access, they are in the same position and subject to the same police power regulations as every other member of the traveling public. Plaintiffs, and every member of the traveling public subject to traffic regulations, have the same right of free access *to* the property *from* the highway. Re-routing and diversion of traffic are police power regulations. Circuity of route, resulting from an exercise of the police power, is an incidental result of a lawful act. It is not the taking or damaging of a property right.

"We have found no authority, nor has any been called to our attention, which allows, to the abutting property owner, damages allegedly arising from statutes or ordinances (a) establishing one-way streets; (b) forbidding 'U' and left turns; or (c) authorizing the use of other suitable traffic-control devices deemed necessary by the proper authorities to warn, regulate, and guide traffic upon public thoroughfares.

"Although an abutting property owner may be inconvenienced by one-way traffic regulation immediately in front of his property, he has no remedy if such regulation be reasonably adapted to the benefit of the traveling public. . . ."

The city of Seattle installed traffic control markers for the purpose of directing traffic by appellant's property, and from his property into Roosevelt Way. Although they were not intended to prevent access to appellant's property, the traffic regulators could interfere with access. This fact, in itself, does not entitle appellant to compensation. Appellant has suffered a compensable claim under Art. 1, § 16 (amendment 9) of the constitution only when the use of the police power in limiting the access has become unreasonable.

In 73 A.L.R. (2d) 691, it is stated that:

". . . Virtually all, if not absolutely all, the cases within the scope of the present annotation recognize either expressly or inferentially that government in general, or the appropriate governmental unit under a proper delegation of authority, has the power to promulgate or enforce traffic regulations in the general public interest, even if they interfere to some extent with the convenience of an abutter's access, or compel some circuity of route. However, the courts have held or recognized to be unreasonable those regulations which *entirely cut off an abutter's practicable access* to the system of streets or highways. Whether the public interest or the private right is deemed prevailing seems to depend on the circumstances.

"Factually speaking, the cases throughout the annotation in general represent an effort to balance the above principles, with the result that, most broadly stated, the issue usually becomes one of reasonableness in the circumstances. However, analysis makes possible a more pointed comment. *In no case has a court held unreasonable, on account of interference with access, a regulation of the general direction, flow, or division of all traffic on a given street or highway.* . . ." (Italics ours.)

In *Hendrickson v. State*, 267 Minn. 436, 127 N. W. (2d) 165 (1964), an action was brought for damages by a property owner who claimed he was denied access to the main

thoroughfare, in at least one direction, except at "interchanges yet to be designated," although he had unlimited access to a service road over which the main thoroughfare could be reached by a circuitous route. That court held a factual question was presented which precluded a summary judgment. However, the court appended footnote 19 as follows:

"We do not suggest that in particular cases the trial court may not have the duty of determining as a matter of law that property has or has not been damaged. In the instant case, for example, had the temporary crossovers been made permanent we would have little hesitation in sustaining a ruling that the remaining access was reasonably convenient and suitable as a matter of law."

Examination of the physical evidence in the case at bar shows no factual determination which could establish that appellant's access was unreasonably limited so as to entitle him to compensation. The regulating and channeling of the traffic in this case falls within the ambit of the reasonable exercise of the police power and, as a matter of law, is not compensable.

In *McMoran v. State*, 55 Wn. (2d) 37, 345 P. (2d) 598 (1959), this court held that it was an unreasonable exercise of the police power for the state to place a concrete curb along the entire edge of plaintiff's property, thereby forcing him to follow a frontage road beyond his property in order to gain access to the thoroughfare. This deprived plaintiff of a property right, as he formerly had a direct access from his property to the thoroughfare.

Here, we do not have a rerouting of Roosevelt Way so that appellant was deprived of a direct access. The traffic was regulated by means of traffic markers, while appellant retained a direct access between his property and Roosevelt Way. There was no total deprivation of direct access from the property to the thoroughfare as was found in *McMoran, supra*. Therefore, *McMoran* does not support appellant's position.

Since there were no factual questions to be resolved, the judgment of the trial court was correct, and is affirmed.

Ott, C. J., Hill, Rosellini, and Hale, JJ., concur.