STATE of Indiana, Appellant–Plaintiff,

v.

KIMCO OF EVANSVILLE, INC., n/k/a KCH Acquisition, Inc., The Franklin Life Insurance Company, and Vanderburgh County, Indiana, Appellees–Defendants.

No. 82A01–0607–CV–301.

Court of Appeals of Indiana.

Oct. 31, 2007.

Rehearing Denied Jan. 14, 2008.

Steve Carter, Attorney General of Indiana, David Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Gerard T. Carmody, Kelley F. Farrell, Carmody MacDonald, P.C., St. Louis, MO, R. Thomas Bodkin, Bamberger Forman Oswald & Hahn, Evansville, IN, Attorneys for Appellee, Kimco of Evansville, Inc., n/k/a KCH Acquisition, Inc.

## OPINION

BARNES, Judge.

### Case Summary

The State appeals the jury's verdict in favor of Kimco, et al., in the amount of $2,300,000.00 for an appropriation of Kimco's real estate in 2000. We affirm.

### Issue

The State raises two issues, which we consolidate and restate as whether Kimco is entitled to damages for its loss of access to a public thoroughfare.

### Facts

Kimco owns Plaza East Shopping Center ("Plaza East") in Evansville located at the intersection of State Route 66, also known as the Lloyd Expressway, and Green River Road. Green River Road runs north and south, and the Lloyd Expressway runs east and west. Plaza East had no ingress or egress along the Lloyd Expressway.[1]

---

1. Plaza East was built as an "at grade shopping center" bordering Division Road. Tr. p. 99. In a previous condemnation action, the State "took the access on Division Road for the Lloyd Expressway[.]" *Id.* As one witness explained, in the first taking, "the highway was elevated, and that changed the whole complexity of the shopping center." *Id.* at

Plaza East's primary entrance was the southern entrance on Green River Road ("Southern Entrance"). The Southern Entrance allowed access to the center of Plaza East's parking lot. The Southern Entrance also allowed shoppers to enter from and exit to both directions on Green River Road.

Plaza East's secondary entrance was the northern entrance on Green River Road ("Northern Entrance"). The Northern Entrance was immediately next to the sidewalk in front of the stores and was narrower than the Southern Entrance. The Northern Entrance allowed "right-in/right out" access for northbound travelers on Green River Road.[2] Exhibit Y–1.

On June 23, 2000, the State filed a complaint to appropriate .154 acres of Plaza East along Green River Road as part of a construction project aimed at improving access to and from the Lloyd Expressway. To facilitate construction, the State also sought a temporary appropriation of .048 acres, encompassing the Southern Entrance and the Northern Entrance of Plaza East. The complaint also requested to permanently limit the ingress and egress associated with Plaza East. The trial court allowed the State to take the proper-ty described in the complaint, but the issue of damages remained unresolved.

When construction was completed in 2004, shoppers traveling southbound on Green River Road could only enter Plaza East through the Northern Entrance because the State had constructed a concrete median blocking southbound access to the Southern Entrance. Shoppers traveling northbound on Green River Road could access Plaza East via the Southern Entrance only after crossing a solid white line, or they could access Plaza East via the Northern Entrance.

Shoppers exiting Plaza East could only use the Southern Entrance to turn right (or north) onto Green River Road because they could not cross the newly constructed concrete median to turn left (or south). Shoppers could exit Plaza East in either direction from the Northern Entrance. Because of the amount of traffic on Green River Road, however, the Northern Entrance was congested and cars became "stacked" immediately in front of the stores, making it more difficult for pedestrians to navigate the parking lot. For purposes of clarity, we include these depictions of Plaza East and Green River Road before and after the construction. BEFORE:

534. This previous taking is not at issue today.

2. There is also access to Plaza East from Plaza East Boulevard, which runs behind Plaza East.

AFTER:

Exhibit V.

During and after the construction process the stores located in Plaza East experienced declining sales. Plaza East went from 94% occupied in 2004 to 56% occupied at the time of trial in 2006. In an effort to keep one of the remaining tenants, Kimco renegotiated a lease for approximately $90,000.00 per year less that the previous $150,000.00 per year lease.

Prior to the appropriation, Plaza East was in average condition and functional, and it was considered a Class B community shopping center by one real estate appraiser. After the appropriation, Plaza East was less convenient to shoppers and was considered less desirable in the real estate market. Plaza East was reduced to a Class C community shopping center.

On February 9, 2006, after a four-day trial was held, a jury returned a verdict in favor of Kimco in the amount of $2,300,000.00. The trial court entered judgment on this verdict and awarded Kimco costs and interest, for a total judgment against the State in the amount of $3,196,859.82. On March 13, 2006, the State filed a motion to correct error. After a hearing, the trial court denied the motion to correct error. The State now appeals.

### Analysis

This case comes to us after the damages phase of the condemnation proceedings. Condemnation proceedings involve two stages: 1) the initial or summary phase, and 2) the phase in which the finder of fact determines damages. *City of Hammond v. Marina Entm't Complex, Inc.*, 733

N.E.2d 958, 966 (Ind.Ct.App.2000), *trans. denied.* "During the initial or summary phase of the proceedings, the action consists solely of legal issues which are decided by the trial court." *Id.* After a consideration of the legality of the action and any objections that may have been filed, the trial court concludes this phase of the proceedings by entering an order of appropriation and appointing appraisers to assess the damages. *Id.* During the second stage of the condemnation proceedings the fact finder must determine the amount of damages sustained by the landowner. *Id.*

It is undisputed that the State took, and Kimco is entitled to damages for, the .154–acre parcel and the temporary construction right of way. The essence of the State's argument, however, is that Kimco cannot be compensated for its loss of access to Green River Road as a matter of law. Accordingly, the State asserts that the trial court improperly admitted evidence of damages associated with the loss of access and improperly instructed the jury regarding loss of access and that the jury's verdict is excessive because it is based on the loss of access.

As an initial matter we must consider the parties' arguments regarding whether a loss of access amounts to a taking is a question of law or a question of fact. For example, Kimco argues, "The determination of the impairment of access issue belongs to the jury, where it was placed by the trial court." Appellees' Br. p. 30. The State responds, "Kimco has presented no authority establishing that access issues are always jury questions merely because there is a pattern jury instruction [3] in

---

3. Jury instruction 10 was based on Pattern Instruction 29.27 and provided:

In order for you to award damages for loss of access, Kimco must have suffered a particular, private injury resulting from a substantial and material interference with

Kimco's rights of ingress and egress which are special and peculiar to this property and when no other reasonable means of access are available.

You may not award damages for loss of access if the remaining access is merely

Indiana relating to access issues.... Whether loss of access is compensable has been treated as a legal question in a number of relevant cases." Appellant's Reply Br. p. 2.

Indeed, Indiana courts have been inconsistent, at best, in considering whether loss of access is a factual or legal question.[4] *Compare State v. Diamond Lanes, Inc.,* 251 Ind. 520, 524, 242 N.E.2d 632, 634 (1968) ("There was substantial evidence for the jury to find that appellee's access was substantially and materially impaired and to award damages on the basis that the value of appellee's property had been reduced by the new construction."); *State v. Stefaniak,* 250 Ind. 631, 638, 238 N.E.2d 451, 455 (1968) ("[I]t is our opinion that the question of a compensable taking is a matter for the jury's determination. Each case of this nature must be grounded upon its own particular set of facts."); *and Jenkins v. Board of County Comm'rs of Madison County,* 698 N.E.2d 1268, 1270 (Ind. Ct.App.1998) ("Whether the interference is substantial is a factual question which must be resolved in each case by the trier of fact."), *trans. denied; with State v. Ensley,* 240 Ind. 472, 491, 164 N.E.2d 342, 351 (1960) ("Since the verdict of the jury included compensation of the alleged partial impairment of appellees' right of access resulting from the construction of the divider strip and since this was not a proper element of damages, the verdict was contrary to law."). However, our supreme court has recently clarified that whether a taking has occurred is a question of law. *Biddle v. BAA Indianapolis, LLC,* 860 N.E.2d 570, 575 (Ind.2007).

*Biddle* addressed whether aircraft noise amounted to a taking of property near the Indianapolis airport. *Biddle* was framed as an inverse condemnation case in which the landowners appealed the granting of BAA's motion for summary judgment. Our supreme court observed, "Although takings cases may be extremely fact sensitive, the ultimate application of constitutional provisions to an established set of facts involves a pure question of law." *Id.* at 575. "Once a taking is found, the question of how much compensation to award is then appropriate for a trier of fact." *Id.*

■ Based on *Biddle's* clarification of this issue, we conclude that whether the State took Kimco's access rights is a question of law. The broad language of the State's complaint and the trial court's order of appropriation,[5] the trial court's rul-

---

more inconvenient or difficult, as long as it is reasonable.

"Other reasonable means of access," as used in this instruction, does not mean access that is reasonable for some other use of the land. Rather, it refers to the access that will permit the land to be used for that purpose regarded as its highest and best use immediately before the taking.

App. p. 175.

4. Another example of the inconsistencies among decisions can be found when comparing language in *State v. Ensley,* 240 Ind. 472, 490–91, 164 N.E.2d 342, 350–51 (1960) with *State v. Stefaniak,* 250 Ind. 631, 638, 238 N.E.2d 451, 455 (1968). In *Ensley,* the court stated:

This court takes judicial notice of the ever-increasing problems of traffic control with which a thriving metropolitan area is confronted. The creation of such facilities as limited access highways, one-way streets, express thoroughfares and other methods of construction such as that involved in the present case, is to be encouraged in the interest of traffic control and regulation to the end that the general welfare and safety of the public may best be served.

*Ensley,* 240 Ind. at 490–91, 164 N.E.2d at 350–51. Only eight years later, our supreme court stated, "We are actually concerned with how much leeway the State is given in building highways." *Stefaniak,* 250 Ind. at 638, 238 N.E.2d at 455.

5. In the State's complaint, it sought to appropriate the .154 acre parcel. Following the legal description of this parcel, the complaint stated:

ing on the admissibility of evidence, the trial court's denial of the State's motion for judgment on evidence during trial, and the trial court's instruction of the jury might each be considered a legal conclusion that a taking of Kimco's access rights occurred. Regardless of the procedure, our review is the same because we review questions of law de novo. *See Chamberlain v. Walpole,* 822 N.E.2d 959, 961 (Ind.2005) ("This presents a question of law that we review de novo."). If a taking was established as a matter of law, it was then for the jury to decide what, if any, damages were compensable.

The central case relied on by both parties is *State v. Ensley,* 240 Ind. 472, 164 N.E.2d 342 (1960). In that case, the Ensleys owned property on Keystone Avenue in Indianapolis that abutted 61st Street on the south and 62nd Street on the north. The State condemned a strip of property adjacent to Keystone Avenue to widen the road.

Prior to the construction, there were two entrances to the recreation facility that the Ensleys operated on the property. One was a sixty-five to sixty-eight foot entrance along Keystone Avenue that allowed north and southbound traffic to enter from Keystone Avenue. The second entrance was fifty feet wide on 62nd Street. After construction, the Keystone Avenue entrance was reduced to forty feet, and because of the divider strip, only southbound traffic

(right in/right out) could use the entrance. After construction, northbound traffic was required to enter the property via the 62nd Street entrance. The issue of damages was tried by a jury, who returned a verdict in favor of the Ensleys.

The State appealed, asserting, "damages, if any, caused by the placing of a divider strip in the center of the new highway are not compensable; and that the divider strip was installed for the purpose of traffic regulation and control...." *Ensley,* 240 Ind. at 479, 164 N.E.2d at 345. The Ensleys responded:

> they are not only entitled to damages occasioned by the taking of a portion of their land, but also to consequential damages ... for the alleged depreciation in the value of their remaining property caused by an alleged material interference with their right of ingress and egress resulting form the construction of a divider strip on Keystone Avenue between 61st and 62nd Streets.

*Id.,* 164 N.E.2d at 345.[6]

Our supreme court held:

> The question which we understand the State to have presented is that damages, if any, caused by the alleged material interference with the right of ingress and egress, are not the direct result of the taking of appellees' land but result from the manner in which the highway is constructed, and hence, are not com-

---

TOGETHER with the permanent extinguishment of *all rights and easements of ingress and egress to, from, and across the limited access facility* (to be know as S.R. 66 and Green River Road ...) to and from the owner's abutting lands along the line or lines described as follows [legal description omitted]. This restriction shall be a covenant running with the land and shall be binding on all successors in title to the said abutting lands.

App. p. 25 (emphasis added). The complaint then went on to describe taking the Northern

Entrance and Southern Entrance "for the purpose of constructing a driveway for service to the owner's private property" that would revert to Kimco on December 31, 2004. *Id.* The trial court issued an order of appropriation that included the same description of property as was in the complaint.

**6.** The statute relied on in *Ensley* is substantially similar to that in effect today. *See* Ind. Code § 32–24–1–9(c).

pensable under the factual situation in this case, and because the verdict of the jury included such damages it is, therefore, contrary to law.

*Id.* at 480, 164 N.E.2d at 345.

The court clarified that the land condemned for the widening of Keystone Avenue was not causally connected to the impaired right of access based on the divider strip. *Id.* at 488, 164 N.E.2d at 349. Accordingly, any damages for the interference with the Ensleys' right of access must have resulted from a taking of access. *See id.,* 164 N.E.2d at 349. The court also recognized "that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route." *Id.* at 489, 164 N.E.2d at 350.

The court observed:

It is well-settled that acts done in the proper exercise of governmental powers and not directly encroaching on private property, although their consequences may impair its use or value, do not constitute a "taking" within the purview of the constitutional provision prohibiting taking of private property for public use without just compensation.

*Id.* at 482, 164 N.E.2d at 346 (footnote omitted). Said another way, "Nor is an abutting property owner entitled to damages merely for 'a partial limitation and obstruction' of the right of access. Such right must be *substantially or materially interfered with or taken away.*" *Id.* at 491, 164 N.E.2d at 351.

The court concluded, "The fact that access to the appellees' property from Keystone Avenue may have been made more circuitous and inconvenient by the manner in which the improved highway was constructed does not, upon the record here, constitute a 'taking' of private property."

*Id.* at 486, 164 N.E.2d at 348. The court held that the trial court's judgment in favor of the Ensleys was contrary to law and reversed. *Id.* at 491, 164 N.E.2d at 351.

Since *Ensley,* our supreme court has recognized the complexity of the loss of access issue. For example, in *State v. Jordan,* 247 Ind. 361, 366, 215 N.E.2d 32, 35 (1966), the court stated, "The question of damages to a business operated on real estate not taken by reason of the construction or repairs of a highway has plagued the courts of this and other jurisdictions for some time." More recently our supreme court has observed:

Some of our own inverse condemnation cases have labeled the required degree of harm for takings a "special" or "peculiar" injury. "In order to receive compensation in a condemnation action the landowner must show that the injury is special and peculiar to his real estate and not some inconvenience suffered by the public generally." This requirement has two aspects to it. First, the injury must be different in kind from what the public experiences. Second, the injury must be of a degree that exceeds mere inconvenience.

Neither of these seems to add much to the task of identifying takings. It merely states the obvious to observe that to have a plausible takings claim one must experience a burden not shared by the public generally. And one who suffers "mere inconvenience" likely possesses an extraordinarily weak takings claim.

*Biddle,* 860 N.E.2d at 580 (citations omitted).

As an example of the range of precedent available to us, we consider *State v. Geiger & Peters, Inc.,* 245 Ind. 143, 196 N.E.2d 740 (1964), in which our supreme court

concluded that a compensable taking had occurred. *Geiger* involved a suit against the State for inverse condemnation after the expansion of Madison Avenue in Indianapolis. In this case the construction of a new expressway cut off ingress and egress to and from Madison Avenue. To reach the expressway from Geiger's property, traffic had to enter Caven Street to the south, then proceed east on Caven Street approximately two blocks over a raised railroad crossing and then south or north by circuitous routes to reach more distant interchanges. Also, "the new dead-end narrow service road to the west side of appellees' property was not adequate to transport the steel beams and trusses 90 feet in length which were fabricated at lessees' plant...." *Geiger,* 245 Ind. at 147, 196 N.E.2d at 740.

In determining whether there had been a taking, our supreme court recognized its prior holding in *Ensley* and stated, "In fact, in the [*Ensley* ] case we specifically recognized the rule that an abutting property owner has an easement of ingress and egress to and from a public highway which constitutes a property right and cannot be substantially or materially interfered with or taken away without due compensation[.]" *Id.* at 149, 196 N.E.2d at 742–43. Although Geiger still had limited access to Caven Street, the court concluded:

> Appellant cannot equate appellees' previous right of access to old Madison Avenue which led to the north and south through the entire city of Indianapolis, with access solely to the narrow dead-end service road which leads nowhere to the north and nowhere to the south except to Caven Street. Whether appellant calls the dead-end service road old Madison Avenue or not, in reality it is not the highway to which appellees previously had access. The injury to appellees is special and peculiar and is different in this case from that sustained by

the public at large. The construction work done on old Madison Avenue and the land immediately west thereof to make a new super highway out of old Madison Avenue, and the creating of obstructions and embankments cutting off appellees' right of ingress and egress to and from the highway, was a taking of appellees' property rights for which they were entitled to compensation in eminent domain.

*Id.* at 150–51, 196 N.E.2d at 743; *see also Diamond Lanes,* 251 Ind. at 523–24, 242 N.E.2d at 634 (concluding that where access completely changed during construction there was substantial evidence for the jury to find that access was substantially and materially impaired and to award damages); *State v. Hastings,* 246 Ind. 475, 483, 206 N.E.2d 874, 878 (1965) (concluding that where no land was taken but owners were deprived of direct access to a new limited access highway, compensation was required); *State v. Tolliver,* 246 Ind. 319, 331–32, 205 N.E.2d 672, 678 (1965) (concluding that bridge capable of holding only 3000 pounds was not sufficient alternative route for steel manufacturing plant whose trucks carried loads of fifty tons of steel and injury was far greater than that suffered by the general public).

In likening the facts before us today to those in *Ensley,* the State argues that "Kimco's alleged loss . . . is legally an inconvenience, at most, suffered by Kimco and the public in general, and therefore, Kimco had no right to recover damages based on this claim." Appellant's Br. p. 28. On the other hand, Kimco asserts, "The trial court followed *Ensley* in recognizing that there is a right to recovery for impaired access when the substantial/material interest test is met." Appellees' Br. p. 26. Kimco also points out that unlike *Ensley* this case involved the construction of a median, the solid white line, the inabil-

ity to widen or change the Northern and Southern Entrances, and the loss of access from the first taking.

We agree with Kimco to the extent that, unlike in *Ensley,* Plaza East's loss of access is not based simply on the construction of the median but also, and importantly, on the reconfigured entrances on Kimco's property. In addition to the median, which limited left hand turns into and out of Plaza East at the Southern Entrance, the State constructed an acceleration lane defined by a solid white line abutting Plaza East that patrons were required to cross to turn into the Southern Entrance.

Also, by making the narrower Northern Entrance the main entrance into Plaza East, cars became stacked immediately in front of the stores, creating substantial congestion. In addition to the congestion at the Northern Entrance, one expert stated that this configuration would cause "safety problems and conflict with pedestrians walking inside the shopping center." Exhibit O p. 14. This same expert testified that the post-construction traffic configuration "is an unsafe entry." Tr. p. 176.

Any one of these changes by itself might not amount to a taking of access rights. When considering all of these changes, however, we conclude that a taking has occurred as matter of law. The State's reconfiguration of Green River Road and the changes to the Southern Entrance and Northern Entrance are peculiar to Plaza East and Kimco, and the changes are "of a degree that exceeds mere inconvenience." *Biddle,* 860 N.E.2d at 580. Although, as the State argues, it "took no point of egress and ingress from Kimco," the entrances were not the same entrances that existed prior to the appropriation. Appellant's Br. p. 27. Under these specific facts, we conclude that this case is distinguishable from *Ensley.*

Given the nature of Kimco's business and the specific changes in accessibility, especially the safety concerns, we conclude that Kimco's injury was different from what the public experienced and amounted to more than mere inconvenience. Thus, Kimco suffered a taking of its access rights to Green River Road as a matter of law.

Accordingly, the trial court properly put before the jury the issue of what, if any, damages were compensable. The trial court properly admitted evidence and instructed the jury regarding damages relating to loss of access. Because the State does not argue that the jury's verdict is not supported by the evidence, we conclude it was within the jury's prerogative to award Kimco $2,300,000.00 in damages.

### Conclusion

Given these specific facts, we conclude that Kimco suffered a taking of its access rights as a matter of the law, and the jury properly determined the amount of damages for the taking suffered by Kimco for its loss of access. The trial court properly admitted evidence related to loss of access and properly instructed the jury regarding loss of access. Further, the jury's verdict is not excessive because Kimco's loss of access was a proper consideration when assessing damages. We affirm.

Affirmed.

KIRSCH, J., and ROBB, J., concur.