STATE of Indiana, Appellant–
Defendant,

v.

John M. DUNN, Appellee–Plaintiff.

No. 82A01–0705–CV–223.

Court of Appeals of Indiana.

June 25, 2008.

See also, 837 N.E.2d 206.

Steve Carter, Attorney General of Indiana, David Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David V. Miller, Robert L. Burkhart, Ziemer Stayman Weitzel & Shoulders, LLP, Evansville, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

The State's construction of a median strip that makes the route of travel to a business property more circuitous is not a compensable taking. We therefore reverse the trial court's partial summary judgment in favor of business owner John M. Dunn against the State and the subsequent damages awarded to Dunn by a jury.

### Facts and Procedural History[1]

Dunn entered the hotel business in 1978. Since that time, he has developed, owned, and operated more than twenty hotel properties. Appellant's App. p. 114. One of these properties is located at 100 South Green River Road in Evansville, Indiana ("Subject Property"). *Id.*

In the late 1980s, the State decided to construct the Lloyd Expressway near the Subject Property. When the Lloyd Expressway was initially constructed, all entrances connecting the Subject Property to Green River Road were eliminated. *Id.* at 129. However, the State then initiated condemnation proceedings to acquire a nearby strip of land belonging to Dunn in order to build a service road connecting the western boundary of the Subject Property to Green River Road. *Id.* at 130. The State successfully acquired the land and constructed the service road, and Dunn received compensation for the taking. *See State v. Dunn,* 837 N.E.2d 206 (Ind.Ct. App.2005).[2]

Thereafter, the Subject Property had access, via the service road, to and from the northbound and southbound lanes of Green River Road. Appellant's App. p. 130. This changed in July 2004, when the State, acting through the Indiana Department of Transportation, installed a concrete median in the center of Green River Road, *id.* at 116, 118, near that road's interchange

---

1. Because we resolve this case based upon the summary judgment issue and do not reach the other issues raised by the State, we confine our examination of the facts to those materials designated by the parties during the summary judgment stage of the proceedings.

2. This earlier case dealing with the compensation owed to Dunn is unrelated to the case at hand.

with State Road 66, *id.* at 165. This median prevents southbound traffic from Green River Road from making left turns into the service road entrance to the Subject Property. *Id.* at 116, 131. The elimination of left-hand turns onto the service road "was designed as a safety measure," as a southbound driver making such a turn would have to cross five lanes of oncoming northbound traffic. *Id.* at 166. The service road remains accessible to the public, although southbound drivers on Green River Road must follow a circuitous route to reach the service road and, hence, the Subject Property. The State undertook this project pursuant to its authority under Indiana Code § 8–23–8–1 to build and improve limited access facilities.[3] Appellant's App. p. 48.

After the State released its plan for the construction of the median but before its actual construction, Dunn, anticipating a loss in clientele because of the reduced convenience of the hotel's entrance, began remodeling the hotel in November 2003 to increase its customer base. *Id.* at 117. While the hotel had apparently operated successfully from approximately 1978 until 2004, *id.* at 129, Dunn characterizes the hotel's occupancy rates between November 2003 until the end of 2004 as "disappointing," *id.* at 118.[4]

Dunn filed an inverse condemnation action against the State, alleging that the erection of the median "has completely eliminated all access to the Hotel and Subject Property from the southbound lane of Green River Road," as it "prevents all left-hand turns from the southbound lanes of Green River Road into the Hotel's vehicular entrance." *Id.* at 32. Therefore, according to Dunn, the median "substantially and materially limited and impaired vehicular access to the Subject Property and vehicular egress from the Subject Property," and this constitutes "a taking of [his] property without just compensation." *Id.* at 33. He sought monetary compensation for the taking. The State answered and acknowledged that the median "prohibit[ed] left hand turns to and from Green River Road and the public service road." *Id.* at 46. However, the State contended that Dunn is not entitled to compensation as a matter of law because the erection of medians resulting in circuitous travel to a business is conducted according to the State's police powers and does not effect a compensable taking. *Id.* at 48. Both parties subsequently filed motions for summary judgment, and the trial court granted Dunn's motion for partial summary judgment, concluding that "a taking of Plaintiff's property rights by the Defendant, State of Indiana, has occurred." *Id.* at 219. The suit thereafter proceeded to jury trial on the issue of damages. The jury returned a verdict in favor of Dunn in the amount of $3,650,000, and the trial court entered judgment accordingly. *Id.* at 27. Upon Dunn's later motion, the trial court awarded him an additional $1,049,600 in prejudgment interest, $109 in costs, and $25,000 in attorneys' fees. *Id.* at 29. The State now appeals.

---

**3.** A "limited access facility" is a "highway or street designed for through traffic, over, from, or to which owners or occupiers of abutting land or other persons have either no right or easement of direct access, light, air, or view because their property abuts upon the limited access facility or for any other reason. The highways or streets may be parkways from which trucks, busses, and other commercial vehicles are excluded or freeways open to use by all customary forms of highway and street traffic." Ind.Code § 8–23–1–28.

**4.** Dunn includes in an affidavit the hotel's occupancy rates during each month of 2004 and the operating loss for the entire year. We note that the State did not construct the median until July 2004. Appellant's App. p. 118–19.

### Discussion and Decision

■ Article I, § 21 of the Indiana Constitution provides that "[n]o person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." Indiana Code § 32–24–1–16 further provides that "[a] person having an interest in property that has been or may be required for a public use without the procedures of [the eminent domain] article or any prior law followed is entitled to have the person's damages assessed" under Indiana's statutory eminent domain procedure, found at Indiana Code chapter 32–24–1. Cases brought pursuant to Indiana Code § 32–24–1–16 are known as inverse condemnation actions. As we have observed in the past, condemnation proceedings are comprised of two stages: (1) an initial or summary phase, and (2) the phase during which the fact finder determines damages. *City of Hammond v. Marina Entm't Complex, Inc.*, 733 N.E.2d 958, 966 (Ind.Ct.App.2000), *trans. denied*. "During the initial or summary phase of the proceedings, the action consists solely of legal issues which are decided by the trial court." *Id.* "During the second stage of the condemnation proceedings the fact finder must determine the amount of damages sustained by the landowner." *Id.*

The State raises four issues on appeal, pertaining to both the initial phase and the damages phase of the adjudication of Dunn's inverse condemnation complaint. We find one issue dispositive: whether the trial court erred as a matter of law in granting partial summary judgment in favor of Dunn and against the State when the State built a median that forces traffic moving in certain directions to travel a more circuitous route to and from Dunn's business property. We therefore will not reach the remaining issues.

"The standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Row v. Holt*, 864 N.E.2d 1011, 1013 (Ind.2007) (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind.2005)). All inferences are to be drawn in favor of the non-moving party. *Id.* "The party appealing from the grant of summary judgment has the burden of persuading the appellate tribunal that the trial court erroneously determined that there is no material issue of fact and that the movant was entitled to summary judgment as a matter of law." *Ind. State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 622 N.E.2d 935, 940 (Ind.1993).

■ Here, the parties do not quibble about whether material issues of fact were shown by the evidence designated in support of the parties' summary judgment motions. Instead, they disagree about whether Dunn was entitled to summary judgment as a matter of law.[5] Whether a taking has occurred is a question of law, *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 575 (Ind.2007), and we review questions of law *de novo*, *Bradley v. City of New Castle*, 764 N.E.2d 212, 216 (Ind. 2002).

The State contends that Dunn was not entitled to summary judgment as a matter of law because the construction of a median, resulting in a circuitous route of ingress and egress for a property, does not constitute a compensable taking under

---

5. We decline Dunn's invitation to find that the State has waived its summary judgment challenge for purposes of appeal. Appellee's Br. p. 16. The State has not waived this issue for failure to present a cogent argument.

Indiana eminent domain law. Dunn counters that he is entitled to compensation under Indiana Code § 8–23–8–1 [6] and that Indiana case law "holds that a determination of a 'taking' relative to a business owner's loss of access requires a fact-sensitive inquiry to consider whether the State action interferes with the distinct investment-backed expectations of the owner and whether the State action interfered with the present use of the property so as to substantially diminish the value of the property." Appellee's Br. p. 13.

In order to determine whether a taking of property has occurred, we look at whether the plaintiff landowner has shown that he or she "has an interest in land which has been taken for a public use without having been appropriated under eminent domain laws." *Jenkins v. Bd. of County Comm'rs of Madison County*, 698 N.E.2d 1268, 1270 (Ind.Ct.App.1998) (citing *City of Hammond, Lake County v. Drangmeister*, 173 Ind.App. 476, 364 N.E.2d 157, 159 (1977)), *reh'g denied, trans. denied.* The threshold question in determining whether a taking has occurred is whether the plaintiff landowner has a property interest in the property that has been acquired by the State. *See* Ind.Code § 32–24–1–16 (allowing inverse condemnation suits where a "person ha[s] an interest in property").

" 'Property' in its legal sense means a valuable right or interest in something rather than the thing itself, and is the right to possess, use and dispose of that something in such a manner as is not inconsistent with law." *State v. Ensley*, 240 Ind. 472, 164 N.E.2d 342, 348–49

(1960). It is well settled that "the right of ingress and egress is a property right which cannot be taken without compensation." *Jenkins*, 698 N.E.2d at 1270; *State v. Lovett*, 254 Ind. 27, 257 N.E.2d 298, 304 (1970); *Ensley*, 164 N.E.2d at 349 ("[A]n abutting property owner has an easement of ingress and egress in a public highway and this constitutes a property right which cannot be substantially or materially interfered with or taken away without due compensation."). However, "[a] property owner is not entitled to unlimited access to abutting property at all points along the highway," *Jenkins*, 698 N.E.2d at 1271, and our Supreme Court has made clear that a taking does not "occur where ingress and egress is made more circuitous and difficult," *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1222 (Ind.2000) (citing *Ensley*, 164 N.E.2d at 348), *reh'g granted on other grounds*, 737 N.E.2d 719 (Ind.2000); *see also Jenkins*, 698 N.E.2d at 1271. This is because "[t]he general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property" and economic damage to a business due to a State action resulting in such a route "is not compensable because [the landowners] have no property right in the free flow of traffic past their place of business." *Ensley*, 164 N.E.2d at 350.

Our Supreme Court has decided a case directly on point with the one before us today. In the case of *State v. Ensley*, the Court addressed whether an interference with a property owner's right of ingress and egress resulting from the construction of a divider strip, or median, was compensable. In that case, just as in this one, the

---

**6.** Indiana Code § 8–23–8–1, the Limited Access Facilities Statute, provides authority to counties and municipalities, acting alone or in cooperation with federal, state, or local agencies, to "plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide limited access facilities for public use on all or any part of a highway...." Whether Dunn is entitled to compensation for actions undertaken pursuant to this statute depends upon whether he has suffered a compensable taking.

construction of a median compelled traffic to and from a business to travel a more circuitous route. *Ensley* involved, in part, the construction of a divider strip on a busy road in Indianapolis. The divider strip blocked northbound traffic from turning directly into a business property: "Northbound traffic, instead of turning directly into the ... entrance, [had to] continue to [an] intersection ... where it then [could] make a left turn and drive west approximately one-half block and enter [the business]" from another entrance. *Id.* at 346. The State contended that the construction of the divider strip was an exercise of the State's police power and was, as such, not a compensable taking. *See State v. Tolliver*, 246 Ind. 319, 205 N.E.2d 672, 675 (Ind.1965) (noting that where the State exercises its police power, no compensation is given). The business owners countered that a provision of Indiana's eminent domain statute, Burns Ind. Stat. Ann. § 3–1706 ¶ 4 (Bobbs–Merrill 1946 Replacement),[7] expressly provided for compensation under the facts. The statute provided for damages as follows: "Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff." Burns Ind. Stat. Ann. § 3–1706 ¶ 4 (Bobbs–Merrill 1946 Replacement).

In addressing the parties' competing claims, *Ensley* articulated the rule that in order to be compensated for a loss of right of access to a property, the landowner's rights must be substantially or materially affected:

> In order to recover for the alleged impairment of their right of access [landowners] must suffer a particular private injury, and not merely an inconvenience

or annoyance, even though it may be greater in degree than such as is suffered by the public generally.... Nor is an abutting property owner entitled to damages merely for "a partial limitation and obstruction" of the right of access. Such right must be *substantially or materially interfered with or taken away.*

*Ensley*, 164 N.E.2d at 347, 351. With this general rule in mind, the landowners contended that the damages suffered as a result of the construction of the divider strip were substantial and material and that they were therefore entitled to compensation. They presented evidence that the damages resulting solely from the divider strip were $157,650.[8] *Id.* at 345. However, the Ensley Court pointed out that landowners have no property right in the free flow of traffic past their land and therefore concluded that the landowners were not entitled to compensation for losses resulting from the construction of the divider strip:

> Since [the business owners] have no property right in the free flow of traffic past their premises, the construction of the divider strip does not deprive them of any property right, and hence, any damage sustained thereby, by loss of business or depreciation in the value of their property, would not, for this further person, be compensable

under the Indiana eminent domain statute. *Id.* at 350. Thus, large financial loss is not the key to determining whether a taking has occurred. Instead, to have suffered a compensable injury under Indiana eminent domain law, the landowner *must* have been, first and foremost, deprived of a property right. *Ensley* makes clear that because there is "no property right in the

---

7. The present version of this statute, found at Indiana Code § 32–24–1–9(c)(4), is almost identical to the statute discussed in *Ensley.*

8. We bear in mind that these were the calculated damages in 1960 or earlier.

free flow of traffic past [a landowner's] premises," the construction of a divider strip or median that acts to create a more circuitous route to and from a parcel of land "does not deprive [the landowner] of any property right" and any "loss of business or depreciation in the value of the[ ] property" is simply noncompensable. *Id.*

*Ensley's* legacy is a clarification of the very different treatments that two types of loss of access claims will receive under Indiana law. On the one hand, cases which allege damages resulting from an alteration of traffic flow ("traffic flow cases") present no cognizable claim for compensation under Indiana eminent domain law because landowners do not have a property right in the free flow of traffic past their land. On the other hand, cases which allege interference with a landowner's rights of ingress and egress ("ingress/egress cases") may present a compensable taking where the interference is substantial or material. Since Ensley, our Supreme Court has addressed a number of cases involving landowners' loss of access claims. However, our Supreme Court has never retreated from its Ensley analysis. Instead, subsequent cases from that Court have split into two lines, adhering to the different treatments of these two types of claims.

Four years after *Ensley,* our Supreme Court addressed an ingress/egress case. In *State v. Geiger & Peters, Inc.,* 245 Ind. 143, 196 N.E.2d 740 (1964), the Court concluded that a landowner had suffered a compensable taking where the construction of an expressway cut off ingress and

egress to and from a highway abutting one side of the landowner's property. However, in determining that this was a compensable taking, the *Geiger* Court expressly distinguished its case from *Ensley* and other traffic flow cases: "The facts of the *Ensley* case were indeed distinguishable from the case at bar as in the former case the property owners were claiming a property right in the free and unrestricted flow of traffic passing their premises and which was diminished by the installation of the divider strip in the highway." *Id.* at 743. *Geiger* expressly reaffirmed the distinction between traffic flow cases and ingress/egress cases: "We refused in *[Ensley]* to equate such alleged 'right' to the free flow of traffic with the property rights of ingress and egress." *Id.*[9]

In *State v. Tolliver,* 205 N.E.2d at 672, and *State v. Hastings,* 246 Ind. 475, 206 N.E.2d 874 (1965), both of which were ingress/egress cases, our Supreme Court further clarified which sorts of factual scenarios are susceptible to examination for substantial and material interference with a landowner's right to access. In *Tolliver,* the Court found a right to compensation where the State placed a barrier across the road leading in and out of the landowners' property, leaving only one route of ingress and egress. The remaining access point to the property was insufficient to allow the landowners to conduct their business *at all.* The property contained a small steel fabricating plant that required trucks to haul raw supplies in and transport finished products out. After the State blocked the primary access route

9. Additionally, in *Geiger,* the Court went further than *Ensley* had in expressing the rationale for not allowing compensation for traffic flow reduction resulting from the construction of medians. While *Ensley* had not reached the question of whether the installation of divider strips was an exercise of police power (and therefore non-compensable for that reason alone) because it used Indiana eminent domain law to determine that the landowners were not entitled to compensation, *Geiger* characterized the installation of divider strips as a "regulation[ ] concerning the free flow of traffic" which is sustainable under the State's police power. *Geiger,* 196 N.E.2d at 743.

between the property and a nearby highway, the only remaining option for the trucks was to "cross[ ] ... a bridge over a creek ... which was in 'bad shape' and had a load limit of 3000 pounds. It was not of sufficient strength to support the trucks which hauled ... products pertaining to the [landowners'] business, sometimes as much as fifty tons of steel." *Tolliver*, 205 N.E.2d at 673. In *Hastings*, the Court again found that cutting off ingress and egress to a property was compensable. In *Hastings*, the State completely severed the landowners' right to ingress and egress: "[T]he State bulldozed the entrances which had been constructed by [the landowners], dug them up and erected a fence," forcing the landowners to construct a new access route to their business. *Hastings*, 206 N.E.2d at 876.

Post *Tolliver* and *Hastings*, our Supreme Court addressed, among other things, a traffic flow claim in *State v. Jordan*, 247 Ind. 361, 215 N.E.2d 32 (1966), *reh'g denied*. In *Jordan*, business owners filed an inverse condemnation suit against the State after a highway improvement project resulted in fewer customers visiting the business due to inconvenience. *Id.* at 35. The trial court permitted witnesses to testify regarding their shopping patterns before the construction versus during the construction. In reversing the trial court and concluding that the business owners had not suffered a compensable taking as a matter of law, the Court again cited the rule that "[a] property owner whose land does not abut on the highway is not entitled to compensation *merely because the construction makes it more difficult to get to the highway.*" *Id.* at 35 (emphasis added). *Jordan* rearticulated *Ensley's* holding to be that traffic flow claims involving "a mere change in the grade or widening of the highway *or the construction of a divider strip which changed the free flow of traffic*" cannot

constitute "a 'taking' within the purview of the state or constitutional provision." *Id.* at 36 (emphasis added).

The following year, in *Papp v. City of Hammond*, our Supreme Court was once again presented with a case alleging loss of access due to a road construction project. 248 Ind. 637, 230 N.E.2d 326 (1967). In *Papp*, which stemmed out of a road project that created periods of "various stages of impassability" on roadways near the landowner's filling station business, the landowner's complaint was not that the construction made it more difficult to reach his business from the highway. *Id.* at 332. Instead, his claim was that his filling station became "inaccessible from the streets." *Id.* at 327. Thus, *Papp* represented an ingress/egress claim. The trial court granted summary judgment in favor of the City, and our Supreme Court agreed with this ruling. The Court compared the degree of loss suffered by the business owner—"temporary inconvenience and losses"—to the "general public interest in the maintenance, widening and repair of streets of the municipality" and doubted that a taking had occurred but concluded that, even if it had, the plaintiff was not entitled to damages. *Id.* at 335.

Finally, in another case cited by both parties, our Supreme Court addressed an ingress/egress claim and concluded that the landowner was entitled to compensation for substantial loss of access. *State v. Diamond Lanes, Inc.*, 251 Ind. 520, 242 N.E.2d 632, 634 (1968). In *Diamond Lanes*, a landowner operated a bowling alley on a piece of property accessible by four access points and by traffic traveling in either direction on two roads. After the State constructed a limited access highway abutting the property that cut off access with certain directions of traffic to the business property, the landowner filed an inverse condemnation action. At first

blush, *Diamond Lanes* appears to be a traffic flow case. However, the Court explained that the primary access point for customers was "completely eliminated" and the access to another road "was taken and in its place there was substituted access onto a frontage road" with a barrier and retaining wall that compelled customers to drive circuitous routes, *id.* at 634, and therefore treated the claim as an ingress/egress claim, concluding that the landowner successfully demonstrated that access was materially and substantially obstructed. It distinguished *Diamond Lanes* from *Ensley* as such: *Ensley* "did not involve the limited access statute. [It] was mainly a 'traffic case' where the property owners were claiming a property right in the free and unrestricted flow of traffic passing their premises and which was diminished by the installation of a divider strip in the highway." *Id.* We observe that, in this case, Dunn apparently contends that *Diamond Lanes* stands for the proposition that *Ensley* does not apply to situations where properties abut limited access facilities. Appellee's Br. p. 31. Such is not the case. It is true that *Diamond Lanes* is distinguishable from *Ensley* because all of the injuries caused to the *Diamond Lanes* landowner arose out of the manner of the State's construction of a new limited access facility pursuant to Indiana statute. *See* Ind.Code § 8–23–8–1. However, since *Diamond Lanes,* our Supreme Court has cited *Ensley* as authority when analyzing a landowner's claim that access to his property was impeded by the manner in which a limited access highway was constructed. *Young v. State,* 252 Ind. 131, 246 N.E.2d 377, 379–80 (1969), *reh'g denied. Diamond Lanes* was simply commenting upon the fact that the landowner's injuries arose out of the State's construction of a new limited access facility, whereas *Ensley* involved the mere construction of a median on a preexisting roadway, and does not stand for the proposition that whether a property abuts a limited access facility will affect whether we treat a landowner's claim as a traffic flow or an ingress/egress claim.

Following these cases from our Supreme Court, this Court soon had the opportunity to address a case involving alleged business losses suffered as a result of the construction of a median strip. In *State v. Cheris,* 153 Ind.App. 451, 287 N.E.2d 777 (1972), *reh'g denied,* we examined whether the landowner's argument constituted a traffic flow claim or an ingress/egress claim such that the Court had to evaluate the degree of interference caused to access to the property. *Id.* at 778. Recognizing the landowners' "concerted attempt to distinguish *Ensley,*" we nonetheless found it directly applicable and rejected the landowners' contention that even in traffic flow cases we must examine the degree of access that has been impaired by the construction of a median. *Id.* at 780. Instead, we treated *Cheris's* claim as a traffic flow claim and applied *Ensley's* straightforward rule. Because we recognized that the landowners' actual argument was that they had a right to the free flow of traffic past their property, we concluded that the trial court erred in allowing an award of compensation for this loss.

Importantly, recent cases from this Court and our Supreme Court have reiterated the rule from *Ensley* that a compensable taking does not occur where traffic flow to and from a property is made more circuitous and difficult because of State action. *Town Council of New Harmony,* 726 N.E.2d at 1222 (citing *Ensley,* 164 N.E.2d at 348); *Old Romney Dev. Co. v. Tippecanoe County,* 817 N.E.2d 1282, 1288 (Ind.Ct.App.2004); *Bussing v. Ind. Dep't of Transp.,* 779 N.E.2d 98, 105 (Ind.Ct.

App.2002), *trans. denied;* [10] *Jenkins,* 698 N.E.2d at 1271.[11]

■ We return now to the question before us: did Dunn suffer a compensable taking when the State constructed a median on Green River Road that compelled customers entering and exiting Dunn's hotel property, heading in certain directions, to travel a more circuitous route? To answer this question, we must determine whether to treat Dunn's suit as a traffic flow claim or an ingress/egress claim. Dunn would have us treat it as an ingress/egress claim, arguing that Indiana eminent domain law provides for a fact-sensitive inquiry into his damages to determine whether a taking has occurred. Appellee's Br. p. 13. He interprets the applicable case law to emphasize the issue of whether the impact upon a property is substantial and material in answering the question of whether a compensable taking has occurred. This is, however, a contention that we examined and rejected in *Cheris,* concluding that the degree of interference in traffic flow cases is simply irrelevant to the question of whether a compensable taking has occurred. *Cheris,* 287 N.E.2d at 780. In reaching this conclusion, *Cheris* applied *Ensley,* the case that still controls today.

*Ensley* instructs us that the construction of a divider strip, or median, that causes traffic to and from a property to travel a more circuitous route does not constitute a compensable taking under Indiana eminent domain law because the landowner does not, as a matter of law, have a property right in the flow of traffic past his or her land. *Ensley,* 164 N.E.2d at 350. In a nutshell, Dunn's argument is that because of the median, access to his hotel property became less convenient for potential guests, which led to lower occupancy rates and economic losses. Despite Dunn's efforts to distinguish his claim from that made in *Ensley,* we agree with the State that "Dunn's claim [is] one essentially showing nothing more than a non-actionable and non-compensable loss of convenient access to the hotel property." Appellant's Br. p. 22. As a matter of Indiana

---

10. The State contends that Dunn's claim is "nearly identical" to the claim in *Bussing,* wherein this Court held that a landowner was not entitled to damages after the State closed an intersection and blocked left-hand turns into the landowner's property. Appellant's Br. p. 18. We agree that the facts of these two cases are quite similar, and we acknowledge that in *Bussing* this Court found the scenario "akin to *Ensley,*" *Bussing,* 779 N.E.2d at 106, but then engaged in a discussion of the degree of interference the State's action had upon access to the property in determining whether a taking occurred. While we agree with *Bussing's* outcome, we disagree with its rationale to the extent that it indicates that this discussion relating to damages is necessary to the question of whether a compensable taking occurred.

11. The parties argue on appeal about whether Dunn's claim is actually a regulatory takings claim such that *Biddle,* 860 N.E.2d at 570, and other regulatory takings cases apply.

*Biddle* articulates that the modern test for regulatory takings "states that regulation effects a taking if it deprives an owner of all or substantially all economic or productive use of his or her property." *Id.* at 577 (citing *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 538–40, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)). The State argues that "Dunn presents no authority suggesting that *Biddle* ... and other such cases apply when the State makes improvements to its roadways." Appellant's Br. p. 11. We need not delve into this question because, as we conclude in this opinion, Dunn's claim is, at its heart, that he had a right to the free flow of traffic past his business. *Ensley* speaks to this issue directly, and to the extent that *Biddle* comments upon *Ensley* it does so to clarify the degree of injury that a landowner must suffer in order to have experienced a compensable taking. *Biddle,* 860 N.E.2d at 580. Pursuant to Ensley, we never reach that question in this case because Dunn does not have a property right in the flow of traffic.

law, this does not constitute a compensable taking. Therefore, Dunn was not entitled to summary judgment as a matter of law.

Dunn criticizes *Ensley* as "shoddy work," which is wholly unhelpful, Appellant's App. p. 154, and we decline his request that we not apply it to this case. As explained in this opinion, *Ensley* is directly on point with the issue before us today, and its progeny have done nothing to weaken its effect. We observe that Indiana is in the firm majority of jurisdictions that have addressed whether the construction of medians in roadways constitutes a compensable taking and have concluded that it does not. Just as the Pennsylvania Supreme Court long ago noted, "The basic problem herein presented has arisen in other jurisdictions and the courts in such jurisdictions have arrived at the result reached." *Wolf v. Commonwealth Dep't of Highways*, 422 Pa. 34, 220 A.2d 868, 874 (1966) (citing *Breidert v. S. Pac. Co.*, 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719, 725 (1964); *LaCroix v. Commonwealth of Massachusetts*, 348 Mass. 652, 205 N.E.2d 228 (1965); *Kansas City v. Berkshire Lumber Co.*, 393 S.W.2d 470 (Mo.1965); *Painter v. State Dep't of Roads*, 177 Neb. 905, 131 N.W.2d 587 (1964); *Brady v. Smith*, 139 W.Va. 259, 79 S.E.2d 851 (1954); *Houghs v. Mackie*, 1 Mich.App. 554, 137 N.W.2d 289 (1965); *McHale v. State of New York*, 278 A.D. 886, 104 N.Y.S.2d 981 (1951), *aff'd*. 304 N.Y. 674, 107 N.E.2d 593 (1952); *State ex rel. State Highway Comm'n v. Meier*, 388 S.W.2d 855 (Mo.1965); *Brock v. State Highway Comm'n*, 195 Kan. 361, 404 P.2d 934 (1965); *Holman v. State of California*, 97 Cal.App.2d 237, 217 P.2d 448 (1950); *People v. Sayig*, 101 Cal.App.2d 890, 226 P.2d 702 (1951); *In re Appropriation of Easements for Highway & Slope Purposes*, 101 Ohio App. 1, 137 N.E.2d 595 (1955); *Snow v. State Highway Comm'n*, 262 N.C. 169, 136 S.E.2d 678 (1964);

*Gene's, Inc. v. City of Charlotte*, 259 N.C. 118, 129 S.E.2d 889 (1963); *City of San Antonio v. Easley*, 368 S.W.2d 683 (Tex. Civ.App.1963); *Ensley*, 240 Ind. 472, 164 N.E.2d 342; *Northern Lights Shopping Center, Inc. v. State of New York*, 20 A.D.2d 415, 247 N.Y.S.2d 333 (1964); *Nelson v. State Highway Comm'n*, 253 Iowa 1248, 115 N.W.2d 695 (1962); *James v. State of Idaho*, 88 Idaho 172, 397 P.2d 766 (1964); *Walker v. State of Washington*, 48 Wash.2d 587, 295 P.2d 328 (1956); *State Highway Comm'n v. Central Paving Co.*, 240 Or. 71, 399 P.2d 1019 (1965); *Kahin v. City of Seattle*, 64 Wash.2d 872, 395 P.2d 79 (1964)); *see also Ehrhart v. Agency of Transp.*, 180 Vt. 125, 904 A.2d 1200, 1203–04 (2006); *County of Anoka v. Blaine Bldg. Corp.*, 566 N.W.2d 331, 336 (Minn. 1997); *Hales v. City of Kansas City*, 248 Kan. 181, 804 P.2d 347, 349–50 (1991); *Hayes v. City of Maryville*, 747 S.W.2d 346, 348–49 (Tenn.Ct.App.1987); *but see State Highway Dep't v. Wilson*, 254 S.C. 360, 175 S.E.2d 391, 396 (1970); *State ex rel. Mo. Highway Transp. Comm'n v. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481, 484–85 (Mo.Ct.App.1992).

We recognize that another panel of this Court recently authored *State v. Kimco of Evansville, Inc.*, 881 N.E.2d 987 (Ind.Ct. App.2007), *reh'g denied, trans. granted*, an appeal involving another Evansville business owner's inverse condemnation action in response to the median on Green River Road. In reaching the conclusion that the landowner had suffered a compensable taking, this Court determined that, "unlike in *Ensley*, [the business's] loss of access is not based simply on the construction of the median but also, and importantly, on the reconfigured entrances on [the landowner's] property." *Id.* at 995. It is important to note that although this Court allowed recovery in that case, *Kimco* does not stand for the proposition that the con-

struction of a median *always* constitutes a compensable taking. Instead, it expressly distances itself from such a conclusion: "Any one of these changes [the construction of the median and the reconfigured entrances] by itself might not amount to a taking of access rights. When considering all of these changes, however, we conclude that a taking has occurred as a matter of law." *Id.* Nevertheless, we must disagree with *Kimco* to the extent that it allows compensation for damages suffered as a direct result of the construction of the median. This is because *Ensley* makes clear that landowners lack property rights in traffic flow such that the construction of a median can not constitute a compensable taking. Indeed, our Supreme Court wrote that property owners "have no property right in the free flow of traffic past their premises, the construction of [a] divider strip does not deprive them of any property right, and hence, any damage sustained thereby, by loss of business or depreciation in the value of their property, would not ... be compensable" under the Indiana eminent domain statute. *Ensley,* 164 N.E.2d at 350. In any event, our Supreme Court recently granted transfer in *Kimco,* thereby vacating the opinion. Ind.App. R. 58(A).

In conclusion, landowners have no property right to the free flow of traffic past their properties. Thus, the construction of a median in a roadway that causes traffic traveling to and from an abutting property to travel a circuitous route does not constitute a compensable taking under Indiana eminent domain law. Therefore, Dunn was not entitled to judgment as a matter of law on the issue of whether he suffered a compensable taking, and the trial court erred in granting Dunn's motion for partial summary judgment.

Reversed.

DARDEN, J., concurs.

BARNES, J., concurs in result with separate opinion.

BARNES, Judge, concurring in result.

I concur in result with the majority's decision to reverse the trial court's grant of partial summary judgment in favor of Dunn. I agree that *State v. Ensley,* 240 Ind. 472, 164 N.E.2d 342 (1960), is directly on point. As in *Ensley,* at issue here is the construction of a median that makes access to Dunn's property more circuitous and inconvenient. *Ensley,* 240 Ind. at 486, 164 N.E.2d at 348. I also believe that even if Dunn suffered a decline in his business because of the construction of the median, he has not shown that the construction of the median resulted in a "particular private injury" greater than such suffered by the public generally. *Id.* at 484, 164 N.E.2d 342, 240 N.E.2d at 347. Dunn's property was accessed by a State-owned service road prior to the construction and continues to be accessed by the same service road after the construction. The building of the median did not result in a private injury to Dunn.

However, I must depart with the majority regarding its discussion of *State v. Kimco,* 881 N.E.2d 987 (Ind.Ct.App.2007), *trans. granted.* As the author of *Kimco,* I am well aware of the facts of that case, and I must conclude that it is inapposite to the case before us today. *Kimco* arose from a different procedural posture and a significantly different factual scenario. Although transfer has been granted in *Kimco,* the facts of this case are on all fours with *Ensley;* the facts of *Kimco,* in my opinion, were not. Accordingly, I concur in result.